Pavneet Singh Uppal, SBN 016805
Shayna H. Balch, SBN 024852
Alanna R. Brook, SBN 028018
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
Telephone: (602) 281-3400
Fax: (602) 281-3401
puppal@fisherphillips.com
sbalch@fisherphillips.com
abrook@fisherphillips.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Swisher Hygiene Franchise Corp.; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Troy Clawson and Teri Clawson, husband and wife; et al.,<br><br>Defendants. | No. CV-15-1331-PHX-DJH<br><br>**PLAINTIFFS' MOTION FOR ADDITIONAL SANCTIONS AGAINST DEFENDANTS AND THEIR FORMER COUNSEL** |

Pursuant to the Court's Order dated October 15, 2018 at Doc. 222, Plaintiffs hereby move for an award of their attorneys' fees and costs in the amount of $527,087.46. Plaintiffs respectfully request that such fees and costs be assessed jointly and severally against Defendants Accurate Chemical Acquisition, Inc. dba Accurate Chemical & Services ("ACS"), Troy Clawson and Teri Clawson and their former counsel, attorneys David Barton, Katya Lancero and the law firm of BurnsBarton, LLP. Joint and several liability is both necessary and appropriate because the Court has determined that Defendants "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." [Doc. 222, p. 29]. With respect to the actions of former defense counsel, the Court has found by "clear and convincing evidence that Ms. Lancero and Mr. Barton facilitated and continued to cover up [Defendant] Clawson's fraud and their own irresponsible conduct." [*Id.* at 23].

The total award of $527,087.46 sought by Plaintiffs is comprised of attorneys' fees in the amount of $487,827.06, costs in the amount of $36,497.74, and additional attorneys'

fees in the amount of $2,762.66 incurred by Plaintiffs in the preparation of this request.[1] The fee portion of the requested award represents more than a twenty percent (20%) reduction from the actual attorneys' fees that Plaintiffs have incurred and paid as a result of the "serious misconduct by Defendants and their counsel." [*Id.* at 24].

Plaintiffs' motion is supported by the following Memorandum of Points and Authorities, the affidavit of undersigned counsel (**Exhibit A**), the Task Based Itemized Statement of Attorneys' Fees and Costs (**Exhibit B**) and by the entire record in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    FACTUAL BACKGROUND

The nature, magnitude and significance of the misconduct committed by Defendants ACS, Troy Clawson and Teri Clawson and their shared counsel, attorneys David Barton and Katya Lancero of the law firm of BurnsBarton, LLP, is too voluminous to properly recount given the page limitations of this motion. However, in its 30 page ruling the Court found, *inter alia*, that "testimony from the evidentiary hearing, deposition testimony, and documentary evidence combine to show a concerted effort [by Defendants and their former counsel] to wrongfully withhold evidence, misrepresent the fact that discoverable evidence existed, and mislead Plaintiffs and the Court." [Doc. 222, p. 26]. The Court concluded "that the evidence and testimony overwhelmingly demonstrates that Defendants' and [defense] counsels' misconduct was willful and done in bad faith." [Doc. 222, p. 29]. Accordingly, the Court held that "Defendants have engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." [*Id.* at 29].

The conduct of Defendants in its own right is exceedingly disturbing, but in this case it was actively aided and abetted by former defense counsel Katya Lancero and David Barton. In

---

[1] An award of fees for preparation of this motion is a matter of sound judicial discretion and supported by relevant case law. *See Camacho v. Bridgeport Fin. Inc.,* 523 F.3d 973, 981 (9th Cir. 2008) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable."); *Commc'ns Workers of Am. v. Ill. Bell Telephone Co.,* 553 F. Supp. 144, 147 (N.D. Ill. 1982) ("Denying attorneys' fees for the time spent obtaining them might decrease the value of a fee award by making attorneys engage in uncompensated litigation to obtain their fee.")

2

fact, the Court found by "clear and convincing evidence" that "Ms. Lancero and Mr. Barton facilitated and continued to cover up Clawson's fraud and their own irresponsible conduct." [*Id.* at 23]. Accordingly, the Court concluded that Defendants and their former counsel engaged in "a concerted effort to wrongfully withhold evidence, to misrepresent the fact that discoverable evidence existed, and [to] mislead Plaintiffs and the Court." [*Id.* at 26].

## II. ARGUMENT

### A. An Award of Attorneys' Fees and Costs Should Jointly and Severally Be Assessed Against Defendants ACS, Troy and Teri Clawson and Their Former Defense Counsel David Barton, Katya Lancero and BurnsBarton, LLP

When litigants engage in egregious misconduct that subverts the integrity of judicial proceedings it is "within the Court's discretion to vindicate itself and compensate [the Plaintiffs] by requiring [Defendants and their counsel] to pay for ***all attorneys' fees***." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 57 (1991)(upholding District Court's invocation of its inherent power to sanction defendant's misconduct by awarding the entirety of attorneys' fees and costs paid by the plaintiff totaling nearly one million dollars)(emphasis added); *Lockary v. Kayfetz,* 974 F.2d 1166 (9th Cir. 1992) (upholding sanctions totaling $136,434.50 against the plaintiff's' law firm pursuant to its inherent power to sanction) (overruled on other grounds). Here, the misconduct of Defendants and their former counsel was so extraordinary that the Court held that the entry of default judgment was required in response to their abusive litigation practices. [*Id.* at 30]. The Court entered default only after determining that "Defendants' and counsels' misconduct was [so] willful and done in [such] bad faith" that "this case is one of the exceptional cases that warrants such a drastic sanction." [*Id.*]

The misconduct committed by Defendants and their former attorneys includes, but is not limited to, the following findings: (1) "Defendant Clawson created a false Affidavit containing multiple false statements, which he signed under penalty of perjury" [Doc. 222, p. 10]; (2) Defendant ACS misrepresented to the Court that it was "not interested in having [its executive employee Clawson] solicit, any Swisher employees or customers" even though such testimony cannot be reconciled with the facts [*Id.* at 11]; (3) Defendants ACS and Clawson, by and through their counsel David Barton, presented testimony that was "not credible" –

specifically, that the spoliated Southern Arizona Plan was deleted by either Defendant Clawson's wife or his children [*Id.* at 12]; (4) the "entirety of Mr. Clawson's testimony – that he forgot that he created the Southern Arizona Plan – [is] unconvincing" [*Id.* at 12]; (5) Defendants' argument, which they presented through their attorney Katya Lancero, that the spoliated Southern Arizona Plan was merely "words on a page" is "less than credible" [*Id.* at 13]; (6) "Mr. Clawson deliberately destroyed the Southern Arizona Plan and therefore engaged in spoliation of electronic discovery in violation of Rule 37…after he was instructed by counsel to preserve all evidence, including electronic evidence" [*Id.* at 13-14]; (7) "Had plaintiffs' not engaged [ESI expert] Mr. Cardwell, the [spoliated] Southern Arizona Plan…may never have been discovered" [*Id.* at 14]; (8) the evidence "destroyed" by Defendants "goes to the heart of Plaintiffs' claims." [*Id.* at 14]. These and other actions caused the Court to conclude that "the connection between the misconduct [by Defendants and their former attorneys] and the matters in controversy is overwhelming." [*Id.* at 26].

Therefore, pursuant to the Court's inherent powers and the Supreme Court's ruling in *Chambers v. NASCO,* the Court is fully authorized to award the attorneys' fees and costs sought by Plaintiffs. Plaintiffs submit that the Court is not required to parse through the record or the attached Tasked Based Itemization of Fees and Costs because *Chambers* makes clear that an award of "all attorneys' fees" is appropriate in response to abusive litigation misconduct. 501 U.S. at 57. Moreover, Defendants and their former attorneys should not be permitted to challenge the reasonableness of Plaintiffs' fees and costs given the "overwhelming" nature of their misconduct. Indeed, as the Court has correctly noted, Defendants and their former counsel spoliated and hid critical evidence while simultaneously attempting to induce the Plaintiffs to settle and dismiss their claims. The evidence which Defendants destroyed "goes to the heart of Plaintiffs' claims." [*Id.* at 14]. As the Court recognized, Defendants and their former counsel fraudulently attempted to convince Plaintiffs that Defendant Clawson had not created the Southern Arizona Plan "to bolster their settlement position". [*Id.* at 26]. Had Defendants settled or "embarked on trial" without the benefit of discovering the spoliation and fraud committed by Defendants and their former counsel, "they

would have incurred substantial prejudice and/or reduced damages." [*Id.*].

Given these and other findings Defendants and their former counsel are in no position to contest either the imposition of joint and several liability or the reasonableness of the fees which Plaintiffs have requested.

**B.      If the Court is Inclined to Entertain Arguments by Defendants or their Former Counsel Regarding the Reasonableness of the Fees and Costs Requested, Plaintiffs Respectfully Submit that the Award Which They Seek is Entirely Reasonable in Light of the Misconduct at Issue.**

As noted above, the fees and costs which Plaintiffs are requesting represent a reduction of more than twenty percent (20%) from the amount of fees and costs which Plaintiffs' incurred and actually paid to their attorneys in this action. Given Defendants' fraud, spoliation, false testimony and their former counsels' facilitation of this misconduct, Defendants are in no position to argue that the Plaintiffs' legal fees and costs are somehow excessive. Nevertheless, if the Court wishes to entertain and permit these arguments notwithstanding the overwhelming misbehavior of Defendants and their former counsel, Plaintiffs respectfully submit that their fees and costs are entirely reasonable. Local Rule of Civil Procedure 54.2(c)(3) provides guidance with regard to the factors to be considered when deciding the reasonableness of an attorneys' fees request. These factors include "the time and labor required of counsel"; the reasonableness of the rates charged, "[t]he amount of money, or the value of the rights, involved, and the results obtained"; and "other matters deemed appropriate under the circumstances."

In reviewing such arguments, Plaintiffs' respectfully submit to the Court that it should first consider that Defendants and their former counsel have yet to apologize to the Court, acknowledge their misdeeds, or show any contrition. [*Id.* at 22]. Here, Defendants' and their counsel's "concerted effort to wrongfully withhold evidence, misrepresent the fact that discoverable evidence existed, and mislead Plaintiffs and the Court," required Plaintiffs' to expend a significant amount of additional time in order to vindicate their rights and obtain relief. [*Id.* at 26]. Perhaps more importantly, Defendants misconduct prevented an early resolution of this case, which was initiated more than three (3) years ago and included six (6) depositions (including deponent in Florida), extensive electronic

discovery, and complete briefing on Defendants' motion for summary judgment (which was filed before the close of discovery and premised largely on purported lack of evidence supporting Plaintiffs' claims). [Doc. 71]. As of the filing of this motion, there are over 220 separate docket entries in this case, and the matter is still ongoing.

Nevertheless, Plaintiffs' have voluntarily reduced their attorneys' fee request by more than 20% by omitting unnecessary, duplicative or excessive time, and deleting time related to tasks that would have been performed even in the absence of misconduct by Defendants and their former counsel. For example, among other things, Plaintiffs have deleted entries related to the initial investigation of this matter and for the preparation and filing of the Complaint and First Amended Complaint. Plaintiffs' voluntary reduction from their total fees more than accounts for any argument that Defendants or their former attorneys may have related to fees that would have been incurred irrespective of their misconduct.

In addition, it should be noted that $26,686.00 of the amount requested represents costs billed by Plaintiffs' forensic expert, Mark Cardwell. As the Court noted, "had Plaintiffs not engaged Mr. Cardwell, the Southern Arizona Plan and what as contained therein may have never been discovered." [*Id.* at 4]. Moreover, the hourly rates charged by Plaintiffs' counsel are completely consistent with the prevailing rates in the local market. Here, Plaintiffs' counsel are seeking recovery of attorneys' fees at a rate which ranged, over the course of three years of litigation, between $284.00 to $484.50/hour for partners, $212.50 to $276.25/hour for associates, and $35.00/hour for law clerks. These rates are reasonable and generally in accordance with the rates charged by other lawyers in the community with similar experience and education.

In *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 187-88, 673 P.2d 927, 931-32 (1983) the Court held that "in corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances." However, even if the community standard were relevant, in a case decided more than 20 years ago the court held that an hourly rate of $250/hour

6

for partners and $75/hour for paralegals was reasonable in the Phoenix market. *Marvin Johnson, P.C. v. Shoen*, 888 F. Supp. 1009, 1020-21 (D. Ariz. 1995). In the intervening more than two decades, the inflation rate and increase in billing rates clearly supports the rates charged by Plaintiffs' counsel in this matter.

"[T]he fee award assessed for misconduct should be proportional to the gravity of the misconduct." *Chambers*, 501 U.S. at 56. Among their numerous misdeeds, Defendants and their former counsel tried to lure Plaintiffs into a settlement based on false information and tried to convince Plaintiffs to agree to a protocol for searching Defendant Clawson's devices that would have prevented the discovery of Defendants' spoliation and fraud on the Court. [*Id.* at 15]. Plaintiffs' respectfully submit that Defendants and their former counsel appear to lie so freely that the true magnitude of their misconduct will never be known. As Mr. Cardwell testified, when a document is deleted and moved to unallocated space "there's no way to predict … how long it might live [on the computer]." [Transcript of March 15, 2018 Proceedings, 122-123.] However, what has been uncovered is more than enough to justify an award of attorneys' fees and costs against Defendants and their former counsel in the amount requested by Plaintiffs.

### C. Fees and Costs Should be Awarded Jointly and Severally Against Defendants and their Former Attorneys.

Joint and several liability against Defendants and their former counsel is entirely appropriate in this instance. Simply put, Defendants engaged in acts of fraud and spoliation which irreparably "undermine[d] the integrity of judicial proceedings." [Doc. 222, p. 29 (internal citations omitted)]. Defendants' former counsel "facilitated and continued to cover up" their clients' fraud on the Court as well as "their own irresponsible conduct." [*Id.* at 23]. The impact of this concerted and combined misconduct cannot be segregated. Rather, Defendants, facilitated by their former counsel, embarked on an integrated plan and strategy of fraud, deception, spoliation and prevarication.

With respect to the law firm of BurnsBarton, LLP, its namesake partner, David Barton, along with his associate attorney Katya Lancero, served at all relevant times as

7

counsel for all Defendants. By clear and convincing evidence, the Court has found "that Ms. Lancero and Mr. Barton facilitated and continued to cover up Clawson's fraud and their own irresponsible conduct." [*Id.* at 23]. Counsel's conduct was in service and part of Defendants' plan and scheme. As the Court has noted, "there is no contrition or acknowledgement by Lancero or Barton that matters could have been more appropriately handled." [*Id.* at 22]. Barton and Lancero have never offered any apology to the Court or Plaintiffs. Instead attorney Barton has characterized the Court's proceedings "as a 'side show' that…bec[a]me an attack on his law firm." [*Id.* at 22]. In rejecting former defense counsels' arguments, the Court has pointedly noted that "the need to have the [sanctions] hearings to begin with lies with [Barton] and Ms. Lancero." [*Id.*]

As for Ms. Lancero, the Court warned her on several occasions that it was not impressed by her "arguments about semantics," that her "wordsmithing" while she was on the witness stand was not appreciated, and that she would be well served to remember "who the fact finder is and who the determiner of credibility of witnesses is" [Transcript of March 2, 2018 Proceedings, p.28:6-15; 29:23-25; 31:24–32:1]. Ms. Lancero did not heed these warnings. But what is truly remarkable is that Mr. Barton, who has practiced law for more than two decades and testified after Ms. Lancero, "advanced the same wordsmithing" and continued to mislead the Court while he was on the witness stand. [Doc. 222, p. 22]. Accordingly, both Barton and Lancero violated their duty of candor to the Court by refusing to concede "that the Southern Arizona Plan…was or is discoverable." [*Id.*] As the Court Order states, such conduct by defense counsel "is simply unacceptable." [*Id.*].[2]

Likewise, Defendant ACS is in no position to argue against the imposition of joint and several liability or that it is somehow an innocent bystander. As an initial matter, the Court has already addressed Defendant ACS' culpability by striking its answer and entering default judgment against all Defendants. These sanctions are based on a specific finding

---

[2] It appears that BurnsBarton has taken no steps to discipline Mr. Barton or Ms. Lancero – both remain employed and the firm's website holds both out as competent and responsible practitioners. [**Exhibit C**.]

8

"that the evidence and testimony overwhelmingly demonstrates that Defendants' and counsels' misconduct was willful and done in bad faith." [*Id.* at 29 (emphasis added)]. Similarly, the Court's order states that "Defendants' have engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." [*Id.* (emphasis added)].

The Court's findings regarding Defendant ACS' culpability and its misconduct are fully supported by the record. The perjured affidavit (which claimed that Clawson had not identified Swisher customers to Defendant ACS) was submitted by ACS on behalf of all Defendants for the benefit of all Defendants. [Doc. 24.] Defendants' perjury and fraud were facilitated by former counsel for ACS. [Doc. 222, p. 23:1-4.] As the Court noted, during the three days of hearings on this matter, when ACS had ample opportunity to present arguments and witnesses in its own defense, it restricted its witnesses to its attorneys (who facilitated fraud upon the Court) and its executive employee Defendant Clawson (who spoliated evidence and lied under oath). [*Id.* at 9]. ACS has never claimed, let alone presented any evidence, that its attorneys or executive employee acted outside the course and scope of their authority.

Defendant ACS's attempts to disclaim responsibility for the acts of its agents is without merit. *See, e.g., Link v. Wabash R. Co.,* 370 U.S. 626, 634 (1962) (in "our system of representative litigation ... each party is deemed bound by the acts of his lawyer-agent"); *Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991) (the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must "bear the risk of attorney error"); *Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 913 (9th Cir. 1986) ("[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective," he must "bear the risk of attorney error that results in procedural default"). If ACS wished to claim otherwise, it had every opportunity to do so over three separate days of hearings regarding the Defendants' misconduct. Instead, ACS through its former counsel chose to denigrate the Court proceedings by calling them a "side show." [*Id.* at 22]. In summary, when it comes to the fraud and spoliation at issue, there was zero daylight between ACS, its executive employee, and their common attorneys. Simply put, ACS did not claim during three days of evidentiary hearings that its counsel or Clawson acted without its

knowledge or approval (or outside the scope of their authority). Any such claim would only have served to compound ACS's misconduct and fraud on the court.

Finally, Plaintiffs' First Amended Complaint alleges that ACS has vicarious liability for the acts of Defendant Clawson. [Doc. 7, ¶ 10]. Given that the Court has found it appropriate to strike ACS's Answer in its entirety, ACS is in no position to disclaim or deny vicarious liability for the acts of its agents. Under Arizona law an employer is vicariously liable for the acts of its employees when the employees' conduct "is the kind the employee is employed to perform, occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it." *Villasenor v. Evans*, 241 Ariz. 300, 303, ¶ 15, 386 P.3d 1273, 1276 (App. 2016) (internal quotation omitted). "An employee's improper actions, even those serving personal desires, will be deemed motivated to serve the employer if those actions are incidental to the employee's legitimate work activity." *Id.*

Here, the Court has already held that "Defendants engaged in spoliation of evidence." [*Id.* at 23]. Even were that not the case, the actions of both Defendant Clawson and ACS's former counsel, BurnsBarton, were done for the benefit of and in order to further ACS's interests – specifically, to deprive Plaintiffs of evidence supporting their claims, delay expeditious resolution of the case, and to make it extremely costly and time consuming for Plaintiffs to prosecute their claims. [*Id.* at 25-26].

### III. CONCLUSION

For the above and foregoing reasons, Plaintiffs respectfully request an award of attorneys' fees and costs against Defendants and their former counsel, jointly and severally, in the total amount of $527,087.46.

RESPECTFULLY SUBMITTED this 29th day of October 2018.

FISHER & PHILLIPS LLP

By: s/ Alanna R. Brook
Pavneet Singh Uppal
Shayna H. Balch
Alanna R. Brook
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on October 29, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

William G. Klain
George H. King
David C. Turnbull
LANG & KLAIN, P.C.
8767 E. Via de Commercio, Suite 102
Scottsdale, AZ 85258
Attorneys for Defendants Clawson

Andrew Abraham
Ralph D. Harris
BURCH & CRACCHIOLO, P.A.
702 E. Osborn Road, Suite 200
Phoenix, AZ 85014
Attorneys for Accurate Chemical Acquisition, Inc.

I further certify that on October 29, 2018 I served a copy of the foregoing document by email and first class mail, postage prepaid, on the following:

David Barton
Katya Lancero
BurnsBarton LLP
45 W. Jefferson, 11th Floor
Phoenix, AZ 85003

Mark I. Harrison
Geoffrey M.T. Sturr
Osborn Maledon, P.A.
2929 North Central Avenue
21st Floor
Phoenix, Arizona 85012


 s/ Michelle C. Colwell

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 805
Phoenix, Arizona 85012-2407
(602) 281-3400