**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Swisher Hygiene Franchise Corporation, et al., | No. CV-15-01331-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Troy Clawson, et al., | |
| Defendants. | |

This matter is before the Court on several Motions. Defendant Accurate Chemical Acquisition Incorporated ("ACS") filed a Motion to Set Aside the Default (Doc. 230). Plaintiffs filed a Response and ACS filed a Reply (Docs. 245 and 250). Plaintiffs filed a Motion for Additional Sanctions (Doc. 225). Defendants ACS and Troy Clawson, and Intervenors[1] David Barton, Katya Lancero, and the BurnsBarton Law Firm filed Responses (Docs. 235, 236, and 238) and Plaintiffs filed a Reply (Doc. 244). Plaintiffs also filed a Motion for Joinder of Additional Parties (Doc. 243) seeking to join the spouses, if any, of David Barton and Katya Lancero. The Intervenors filed a Response and Plaintiffs filed a Reply. (Docs. 249 and 251). These matters are fully briefed.[2]

---

[1] The Court granted a Motion to Intervene by David T Barton, Katya M Lancero, BurnsBarton PLC for the sole purpose of responding to the Motion for Additional Sanctions and the Motion for Joinder. (Doc. 237).

[2] The parties requested oral argument on their various motions. The Court denies the request because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed.R.Civ.P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

# I. Background[3]

Relevant to the issues here, the Court found the following in its Order on the Motion for Sanctions. (Doc. 222). In early June 2015, Clawson left Swisher to join ACS as its senior business development executive. (Doc. 92 at 12-13). Shortly after Clawson joined ACS, ACS President, Bradley Zall ("Zall"), issued Clawson a letter warning that he was prohibited from using Swisher's confidential information and soliciting Swisher's customers. Clawson signed this letter. (Doc. 92 at 14-15). As the senior business development executive for ACS, Clawson's main objective was to develop business for ACS. (Doc. 92 at 16). In light of that role, Zall asked Clawson to prepare a plan to develop ACS's business, which Clawson did. (*Id.*)

## A. Initial Affidavit

Early in this case, Plaintiffs sought a preliminary injunction to enjoin Defendants Clawson and ACS from soliciting any Swisher employee for two years and from using or disclosing any information Clawson had gathered, prepared, or assembled while employed by Swisher. (Doc. 21). Defendants objected, stating that the application for preliminary injunction was an extraordinary request that was completely without merit.[4] (Doc. 24). In support of this argument, Defendants filed a sworn Affidavit of Troy Clawson dated July 31, 2015. (Doc. 24-1). The Affidavit stated, in relevant part, "I have not solicited Swisher customers either before or after I left Swisher, ***nor have I identified any Swisher customers that ACS should go after***. ***I am not in possession*** of any Swisher confidential information or property, ***nor did I ever provide*** any Swisher confidential information or property ***to anyone at ACS***." (Doc. 24-1, ¶¶ 17-18) (emphasis added).

On or about April 26, 2016, Defendants produced a copy of a June 11, 2015 email from Clawson to Zall, along with printouts of two documents which were attached to

---

[3] The facts of this case are lengthy and were explained in detail in the Court's Order granting Plaintiffs' Motion for Sanctions (Doc. 222). The Court will not recount all those facts again.

[4] At the time, ACS was represented by Mr. Craig O'Loughlin of Quarles & Brady.

Clawson's email: (1) the "Accurate Northern Arizona Plan.docx," and (2) the "Accurate Phoenix Arizona Plan.docx." (Doc. 50). The Plans showed that Clawson's Affidavit, in which he stated that he had not "identified any Swisher customers that ACS should go after" was patently false. (*Id.*) In fact, Defendant Clawson emailed Zall detailed lists of "customers that we need to concentrate on," identifying approximately 129 Swisher customers, customer account values, who to contact to solicit the customers, customer buying history, the identities of Swisher employees who managed the customer relationships, and additional confidential information. (*Id.*) Notwithstanding the production of the Northern Arizona Plan and the Phoenix Plan, Defendants stated that "[a]lthough Clawson's email to Zall stated that he would 'work on Southern Arizona tomorrow,' Clawson ***never actually ended up formulating a plan*** for Southern Arizona." (*Id.*) (emphasis added).

## B. Notice of Errata

On April 27, 2016, about eight months after Clawson executed the original Affidavit, Clawson filed a "Notice of Errata,"[5] which contained a "corrected" Affidavit. (Doc. 42). The Notice of Errata was filed by Attorney David Barton of BurnsBarton. The Notice of Errata stated that Defendants "hereby notify the Court of an error . . . in the Affidavit of Troy Clawson." (Doc. 42). The "corrected" Affidavit states as follows:

> Swisher also alleges that Tony Khoury purportedly said that I told him that I had taken all of Swisher's 'working capital calculator documents' and that ACS and I were using those documents to identify Swisher customers to target. I never made any such statement to Tony and I never gave any of those documents to ACS. As noted above, I have not solicited Swisher customers either before or after I left Swisher.

(Doc. 42-1, ¶17). Notably, the "corrected" Affidavit omitted the statement "nor have I identified any Swisher customers that ACS should go after." (*Id.*) Exactly one week

---

[5] Notices of Errata are used to correct "clerical errors" and not to present new or substantially different evidence to the court. *See Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007).

later, Mr. O'Loughlin and the Quarles & Brady law firm, previously attorneys for ACS, moved to withdraw from the case. (Doc. 43). The Court granted that Motion, and David Barton and Katya Lancero of BurnsBarton became counsel of record for Defendants ACS as well as Clawson.[6] (Doc. 44).

### C. Motions for Sanctions

On June 2, 2016, Plaintiffs filed their first Motion for Sanctions. (Doc. 48). The Motion alleged that the July 31, 2015, Affidavit filed with the Court and signed by Clawson was false in a substantial manner. The Motion alleged that Defendants committed a fraud on the Court by filing a perjured Affidavit, and that Defendants attempted to cover up their fraud by filing a revised Affidavit as a "Notice of Errata." (*Id.*) Moreover, Plaintiffs alleged that Defendants attempted to shield the new information from the Court by failing to disclose that the original Affidavit was being replaced by one that was substantially different. (*Id.*) Plaintiffs' Motion sought a negative inference jury instruction regarding the alleged perjury and an order precluding Defendants from arguing that they did not make use of Swisher's confidential client information. (*Id.*)

On March 9, 2017, Plaintiffs filed a Second Motion for Sanctions and Default Judgment against Defendants. (Doc. 103) ("Second Motion"). In the Second Motion, Plaintiffs requested both sanctions and default.[7] Plaintiffs alleged that Defendants knowingly submitted a perjured Affidavit from Clawson. The main basis for the renewed Motion, however, was recently discovered information related to the "Plans" discussed in Clawson's emails referenced above. Plaintiffs argued that "[r]ecent electronic discovery has revealed that Defendants again lied to the Court in response to Plaintiffs' Motion for

---

[6] The Motion for Substitution of Counsel dated May 4, 2016, states that "[ACS has expressed to the undersigned (Quarles & Brady LLP) that it no longer wishes to be represented by the undersigned in this case. [ACS] has hired David Barton of BurnsBarton LLP, who is already counsel of record for Defendants Troy Clawson and Teri Clawson in this case, to represent [ACS] and to replace the undersigned attorneys." (Doc. 43 at 1-2).

[7] The Court denied the First Motion as moot because Plaintiffs' Second Motion sought relief based on the same conduct alleged in the First Motion. (Doc. 105).

Sanctions." (Doc. 103 at 1). Plaintiffs hired a forensic examiner, Mark Cardwell, to examine Clawson's laptop and thumb drive. On the thumb drive, Mr. Cardwell found traces of a document titled "Accurate Southern Arizona Plan" in unallocated space, indicating it had previously been deleted. The document was recovered by Mr. Cardwell.[8] Clawson's Plan identified approximately 90 Swisher customers to be brought over to ACS. The Plan also listed Swisher employees "worth bringing over" and their salaries. (Doc. 91).

Plaintiffs argued that "[t]his additional perjury was only discovered through expensive and time-consuming electronic discovery because Defendants deleted and spoliated the electronic document which proves their sworn prevarication." (Doc. 103). Plaintiffs sought entry of default in the Second Motion, as a sanction for the "repeated lies and fraud on the Court." (*Id.* at 1-2).

### D.  Hearings

Evidentiary hearings were conducted on Plaintiffs' Second Motion for Sanctions on March 2, March 15, and March 22, 2018. Over the course of the three days of hearings, the Court heard testimony from Attorney Katya Lancero, Defendant Troy Clawson, Mr. Mark Cardwell, and Attorney David Barton. (Docs. 168, 180 and 191). Notably, ACS President Zall did not appear at the hearings. The Court issued its preliminary ruling granting Plaintiffs' Motion at the March 22 hearing, and a written Order (the "Order") followed on October 15, 2018. (Doc. 222). The Court held that Defendants used Plaintiffs' confidential and proprietary information to solicit ACS customers, that Defendants engaged in the spoliation of evidence and attempted to cover up that spoliation, and that Plaintiffs were prejudiced by Defendants' actions. (*Id.* at 20-23). The Court also found that ACS's and Clawson's Counsel, Mr. Barton and Ms. Lancero, were not credible and lacked candor to the Court in their testimony regarding their roles in the conduct of their clients. (*Id.* at 20-23). Consequently, the Court struck

---

[8] Defendants filed a motion to strike portions of the declaration of Mark Cardwell on the basis that his report was not disclosed by the deadline. (Doc. 139). The Court denied that Motion.

Defendants' Answers (Docs. 22 and 23) and entered default against Defendants. (Doc. 222).

The Court granted Mr. Barton's and Ms. Lancero's Motion to Withdraw as Counsel for Defendants ACS and Clawson and Ordered those Defendants to retain new counsel. (Doc. 192). Following the Court's Order, Ralph Harris and Andrew Abraham of Burch & Cracchiolo PA appeared on behalf of Defendant ACS. (Doc. 205). Attorneys William Klain, George King, and David Turnbull of Lang & Klain PC appeared on behalf of Defendants Troy and Teri Clawson. (Doc. 204). The Court also granted an Amended Motion to Intervene filed on behalf of Mr. Barton, Ms. Lancero, and BurnsBarton. (Doc. 237). The Intervenors are represented by Geoffrey Sturr and Jeffrey Molinar of Osborn Maledon.

## II.     Motion to Set Aside the Default

Defendant ACS asks the Court to set aside the Default entered against it arguing, for the first time, that all the fault lies with its former senior business development executive, Clawson. ACS states that "*At this time*, [ACS] requests the Court consider the conduct of Defendant [ACS] separately from that of Defendant Clawson." (Doc. 230 at 2) (emphasis added). ACS argues that it was not the culpable party, that it cannot be held liable for the acts of its senior business development executive or its former attorneys, and that default is not an appropriate remedy for spoliation of evidence. (Doc. 230). Notably, although represented, Defendant Clawson did not file a motion to set aside the default or a motion to reconsider the Court's Order and the time to do so has expired.

### A.     Legal Standards

As analyzed at length in the Court's prior Order, "[t]he inherent powers of federal courts are those which are necessary to the exercise of all others," including "the well-acknowledged inherent power . . . to levy sanctions in response to abusive litigation practices." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764–65 (1980). In this circuit, "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of

justice." *Wyle v. R.J. Reynolds Industries, Inc*., 709 F.2d 585, 589 (9th Cir. 1983). This includes situations where evidence is spoliated.[9] Due process limits the imposition of the severe sanctions of dismissal or default to "extreme circumstances" in which "the deception relates to the matters in controversy" and prevents their imposition "merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case." *Id.* at 591. "Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault, or bad faith." *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985). Dismissal is appropriate where a "pattern of deception and discovery abuse made it impossible" for the district court to conduct a trial "with any reasonable assurance that the truth would be available." *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057–58 (9th Cir. 1998). The Ninth Circuit has explained that "[w]hat is most critical for case-dispositive sanctions . . . is whether the discovery violations threaten to interfere with the rightful decision of the case." *Id.* Under its inherent power to control litigation, a district court may levy sanctions, including dismissal of the action, for spoliation of evidence. *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir. 2006) (citing *Anheuser–Busch, Inc. v. Natural Beverage Distribs.,* 69 F.3d 337, 348 (9th Cir. 1995)).

Where default has been entered, the Federal Rules provide that a "court may set aside an entry of default for good cause . . .." Fed. R. Civ. Pro. 55(c). To determine "good cause," a court must "consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice" the other party. *See Franchise Holding*, LLC v. Huntington Restaurants *Group, Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004). This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is

---

[9] Spoliation is defined as the "destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation." *See Surowiec v. Capital Title Agency, Inc.,* 790 F.Supp. 2d 997, 1005 (D. Ariz. 2011).

disjunctive, such that a finding that any one of these factors is true is reason for the court to refuse to set aside the default. *See id.* On appeal of a court's order entering default, the standard "is not whether . . . the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." *National Hockey League v. Metro Hockey Club*, 427 U.S. 639, 642 (1976).

## B. Analysis

ACS now argues, for the first time, that its former business executive and its former attorneys were responsible for the spoliation of evidence and the willful deception of the Court, and that Zall had no knowledge of the misconduct. (Doc. 230).

### 1. Zall is not a party

As an initial matter, ACS proposes that "the Court re-open the testimony regarding the motions for sanctions and permit [ACS] to make Bradley Zall available to testify – something he was always ready, but not asked, to do." (Doc. 230 at 2). The Court finds this statement to be disingenuous in light of the proceedings in this case.[10] If Zall was "ready" to testify but simply "not asked" to do so, that was a strategic litigation decision made by ACS's counsel. ACS's counsel, presumably in conjunction with Zall, made a litigation decision to have ACS's business executive take the stand and be questioned on its behalf. If ACS believed Zall had relevant information to provide, it should have made him available. In fact, the Court noted in its oral ruling at the conclusion of day three of testimony that it was "interesting that a representative from ACS, president Mr. Zall, never appeared in these proceedings." (Doc. 199 at 54). Moreover, the fact that ACS now has new counsel is no reason for the Court to "re-open the testimony." Importantly, Zall is not a party to these proceedings, nor has he ever been. He is the CEO of Defendant ACS, and ACS, through counsel and its senior business executive, appeared at all proceedings. The Court will not second-guess counsel's strategic litigation decision to

---

[10] The Court recognizes that new counsel has appeared on behalf of Defendant ACS since the Court granted Mr. Barton's and Ms. Lancero's Motion to Withdraw from representation in March 2018, and that they have not been on the case for the four years that this case has been pending before the Court. However, the Court expects all counsel to familiarize themselves with the record to ensure it is accurately portraying the facts.

keep Zall out of these proceedings.[11]

The Court finds that ACS had notice of all hearings and an oppourtunity to be heard, and indeed that ACS was present during the entirety of the motion hearing, through its business executive and its counsel. Notably, ACS was represented by BurnsBarton throughout all of the relevant events, only being forced to seek new counsel when the Court granted BurnsBarton's Motion to Withdraw after the March 2018 hearings. Only now, after the Court entered Default against all Defendants, does ACS decide to agree strongly with Plaintiffs' initial allegations, but place all of the blame on their business executive and on their former counsel. The Court is not persuaded.

## 2.    Setting aside default

ACS next argues that the Court should set aside the default against it. A "court may set aside an entry of default for good cause . . .." Fed. R. Civ. Pro. 55(c). The Court will examine the good cause factors in turn, keeping in mind that if any factor is met, default will not be set aside. *See Franchise Holding II*, 375 F.3d at 925–26.

### a.    Culpable Conduct

ACS first argues that it was not the culpable party and therefore the default must be set aside. Plaintiffs argue that ACS is responsible for the conduct of its business development executive, Clawson, and its former attorneys.

#### i.    Corporation acts through its officers

In general, a corporation acts through its officers, agents or employees and is liable for the actions of such persons acting within the scope of their agency. *S.E.C. v. Jenkins*, 718 F. Supp. 2d 1070, 1075 (D. Ariz. 2010).[12] Under Arizona law, "[t]he

[11] ACS later changes its argument slightly in its Reply, stating that "there was no reason for [ACS] to produce Mr. Zall at the evidentiary hearing because there were no . . . allegations to refute." (Doc. 250 at 10). The Court reminds ACS that Zall is not a *party* to these proceedings, and he is not subject to the Court's default Order.

[12] Both parties cite to Arizona state law throughout their briefing. Previously in this case, on briefing on the motions for summary judgment, Defendants strenuously argued that Arizona state law applied to the breach of contract claim, while Plaintiffs pointed out to the Court that the employment contract contained a choice of law provision mandating that North Carolina law applied. The Court stated that "Defendants, whether intentional or not, misled the Court by failing to mention this critical fact. Instead, they argue at length that the relevant provisions are unenforceable under Arizona law, without

doctrine of *respondeat superior* generally holds an employer vicariously liable for the negligent work-related actions of its employees." *Tarron v. Bowen Mach. & Fabricating, Inc.,* 235 P.3d 1030, 1033 (2010). However, "an employer is vicariously liable for such acts only if the employee is acting within the scope of employment." *Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 601 (2012). "To determine the course and scope of employment, Arizona courts have long considered the extent to which the employee was subject to the employer's control." *Id.* This approach is consistent with the Restatement of Agency. *E.g., Consolidated Motors v. Ketcham,* 66 P.2d 246, 250 (Ariz. 1937) (citing Restatement (First) of Agency § 220 (1933)); *Santiago v. Phx. Newspapers, Inc.,* 794 P.2d 138, 141–42 (1990) (citing Restatement (Second) of Agency ("Restatement (Second)") § 220 (1958)). The Restatement (Second) of Agency identifies several factors for determining whether an employer exercised control or retained the right to control an employee's conduct when the act in question occurred. *See* Restatement (Second) §§ 219(2), 220(2), 228(1), 229(2). "These factors include the previous relations between the employer and the employee and whether the act (a) was the kind the employee was hired to perform, (b) was commonly done by the employee, (c) occurred within the employee's working hours, and (d) furthered the employer's purposes or fell outside the employer's enterprise." *Engler*, 280 P.3d at 602 (internal citations omitted).

ACS argues that there is no evidence of how it "had supposedly deleted or spoliated any documents." (Doc. 250 at 3). ACS's argument misses the mark. ACS, a corporation, did not delete any documents, and nor could it. A corporation, however, acts

---

acknowledging that the Agreement itself expressly states it is governed by North Carolina law." (Doc. 129 at 5). The Court denied summary judgment as to that claim and analyzed the remainder of the claims under Arizona state law. For purposes of the current Motion, the Court will analyze the issues pursuant to Arizona law, as it appears that only the employment contract between Swisher and Clawson was governed by North Carolina law, and not the relationship between ACS and Clawson. Nonetheless, the standards for these legal concepts appear to be the same under both North Carolina and Arizona law. *See Woodson v. Rowland,* 329 N.C. 330, 348 (1991) ("Our holding is consistent with the principle that agents of corporations and the corporations themselves may both be held liable for the agent's torts committed in the course and scope of the agency relationship under the doctrine of *respondeat superior*.").

through its officers, agents, and employees. In this case, ACS acted through its business executive, Clawson.[13] It is undisputed that in early June 2015, Clawson left Swisher to join ACS as a senior business development executive. (Doc. 92 at 12-13). In that role, Clawson's main objective was to develop business for ACS. (Doc. 92 at 16). Consequently, Zall asked Clawson to "formulate" and prepare a plan to develop ACS's business, which Clawson did, using Plaintiffs' confidential proprietary information. (*Id.*; Doc. 115 at 3). Clawson testified that, during his first week of employment with ACS, Zall asked him to "stay home and come up with a plan or business plan." (Doc. 186 at 26). Clawson testified that he identified over 100 Swisher customers that ACS should "go after" and that he gave this information to Zall. (Doc. 186 at 8). This project took Clawson "more than a couple of days." (Doc. 186 at 26). The record establishes that Zall was aware of Clawson's actions.

Moreover, Clawson testified at his deposition that he mistakenly solicited a Swisher customer while making "cold calls." (Doc. 245-1 at 27-28). However, during the discovery process it was revealed that Clawson had developed a custom 15-page PowerPoint presentation for this customer, therefore indicating that Clawson's actions with that customer were intentional. (Doc. 59). Zall was present at Clawson's deposition when these false statements were made, therefore, he was aware of Clawson's solicitation of Swisher customers. (Doc. 245-1 at 26).

The Court finds that the conduct at issue, the use of confidential Swisher information to create plans to develop ACS's business, was precisely the work that Clawson "was hired to perform" and that was "commonly done by the employee."

---

[13] ACS relies heavily on two cases for the proposition that "sanctions for spoliation are not awarded based on the doctrine of *respondeat superior*," therefore arguing that a corporation cannot be sanctioned for the bad acts of its employees. (Doc. 250 at 6). Not only are the cases cited out of circuit, one is an order issued by a magistrate judge in the Southern District of West Virginia, and the other is bankruptcy court order from the Western District of Missouri. The quote that ACS cites in its brief related to *respondeat superior* is quoted properly from the magistrate judge's order, however, the quote comes from a section of the order that does not have an attributable citation to any other law. Even if not completely dicta, it is certainly not binding on this Court. ACS has not cited any cases in support of its arguments on this point within this Circuit or from other Circuits across the country.

*Engler*, 280 P.3d at 602 (internal citations omitted).  Moreover, Clawson's actions in not only creating the plan, but also in deleting the plan and attempting to cover it up, furthered ACS's purposes and was for the benefit of ACS.  Additionally, although Clawson was at home, the Court finds that he was acting during his "working hours" when he engaged in the conduct at issue, based on Zall's instruction to stay home and work on a business plan.  (Doc. 186 at 26).  ACS thus exerted control over its business executive, Clawson.

Alternatively, ACS argues that it should somehow be rewarded as the entity that "located and produced" the July 11, 2015 email which led to the discovery of the deleted Southern Arizona Plan.  (Doc. 250 at 3).  What ACS does not acknowledge is that the email in question was sent from Clawson to Zall, wherein Clawson told Zall that he would start working on a plan for Southern Arizona tomorrow.  Subsequently, Clawson, through his attorneys at BurnsBarton, submitted a false affidavit to the Court regarding the contents described in that email.  Moreover, ACS decided to merge legal representation with its business executive, and also became represented by BurnsBarton. ACS may be claiming at this late stage that Zall did not know Clawson was lying; however, that does not absolve ACS of its business executive's actions.[14]  There is ample evidence in the record that ACS hired Clawson to increase business, that Zall instructed Clawson to formulate business plans, that Clawson told Zall he would start working on the plans, and that Clawson used confidential Swisher information to make the plans and then delete the evidence of his misconduct once litigation had commenced.  (Doc. 222). There is also evidence that Clawson was employed by and acting on behalf of ACS at all relevant times.  ACS did not put forward any witness or evidence to show that ACS was not culpable or offer some alternate explanation.

Therefore, the Court finds that all four factors strongly support a finding that ACS maintained control over Clawson when he created and subsequently spoliated evidence, and that Clawson was acting on behalf of and for the benefit of ACS.

---

[14] It bears restating that Zall is not a party to these proceedings.

## ii.     Default as an appropriate sanction

ACS next argues that the default needs to be set aside, because default is not an appropriate sanction for the conduct here.  ACS cites to a number of cases that, while in general relate to motions for setting aside the default, are distinguishable from the facts here.  The cases cited by ACS establish that default would not be an appropriate sanction in most cases where a party has failed to follow discovery orders and deadlines.  *See Fjelstad v. Am. Honda Motor Co*., 762 F.2d 1334, 1338 (9th Cir. 1985) (holding that the district court exceeded its authority in imposing sanction of default for "negligent failures to provide discovery").  However, the conduct here was far more egregious than a mere failure to comply with discovery deadlines.  The *Fjelstad* decision went on to remark that "[d]ue process limits the imposition of the severe sanctions of dismissal or default to 'extreme circumstances' in which 'the deception relates to the matters in controversy' and prevents their imposition 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'"  *Fjelstad*, 762 F.2d at 1338 (citing *Wyle*, 709 F.2d at 589, 591).  ACS also argues that "neither dismissal nor preclusion of evidence that is tantamount to dismissal may be imposed when the failure to comply with discovery orders is due to circumstances beyond the disobedient party's control."  *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980).  This case also dealt with a failure to follow discovery orders of the court, specifically the failure of the government to provide interrogatory responses.  *Id.*  Interestingly, the Ninth Circuit held that the court did not abuse its discretion in imposing "severe sanctions" on the government for non-compliance with discovery production, conduct far less severe than the conduct here.  In sum, none of the cases cited by ACS involve spoliation of evidence that goes to the heart of a plaintiff's claims, as was the case here.  The conduct committed by Defendants in this case forced the Court to conclude that the "pattern of deception and discovery abuse made it impossible" to conduct a trial "with any reasonable assurance that the truth would be available."  *See Valley Engineers Inc.*, 158 F.3d at 1057–5.  If the bad acts committed in this case are not

"extreme circumstances," the Court is unsure what would so qualify. The Court therefore finds, as it has previously, that default is an appropriate sanction for the egregious conduct that transpired here.

### iii. Court may consider ACS's attorneys' conduct

ACS next argues that the Court should not consider the conduct of its former attorneys. At this juncture, and with new attorneys, ACS argues that evidence was presented as to bad acts committed by its business executive "Clawson and the BurnsBarton attorneys," but "none proving any such acts by [ACS]." (Doc. 250 at 3). ACS fails to point out that "the BurnsBarton attorneys" were *its* attorneys.

The Ninth Circuit has upheld the dismissal of a case based *solely* on the conduct of a party's attorney. *See Malone v. U.S. Postal Serv.*, 833 F.2d 128, 134 (9th Cir. 1987). In *Malone*, plaintiff's attorney failed to prepare for trial, resulting in the court declaring a mistrial. Prior to the re-trial, the court ordered plaintiff to submit specific information about the witnesses she would be presenting at trial, and plaintiff's attorney refused to comply. The court dismissed the case based on the attorney's failure to follow court orders. On appeal, plaintiff argued that "the district court's order of dismissal unfairly punishes her for the misdeeds of her attorney." *Id.* The Ninth Circuit rejected that argument, stating that "in light of the egregious nature of the malfeasance at issue here, we cannot conclude that the district court abused its discretion in declining to excuse Malone for the faults of her attorney." *Id.*; *see also Chism v. Nat'l Heritage Life Ins. Co.*, 637 F.2d 1328, 1332 (9th Cir. 1981) ("district courts cannot function efficiently unless they can effectively require compliance with reasonable rules"); *overruled on other grounds by Bryant v. Ford Motor Co.*, 832 F.2d 1080 (9th Cir. 1987). In a similar vein, the Supreme Court has held that:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which

each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.

*Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) (internal citations omitted).

Here, the Court specifically found that the actions of ACS executive Clawson, and the misdeeds of ACS's attorneys, were done for the benefit of ACS and to the detriment of Plaintiffs. (Doc. 222 at 23) ("The Court finds that the briefing submitted and the testimony at the hearings are clear and convincing evidence that Ms. Lancero and Mr. Barton facilitated and continued to cover up Clawson's fraud and their own irresponsible conduct."). The Court also found fraudulent conduct to include false Affidavits submitted under oath, deletion of important evidence, and found that ACS's attorneys lacked candor to the Court. (*Id.*) Defendants' counsel also filed a Motion to prevent the forensic examiner's report (establishing that the Plan had been created and deleted from Clawson's computer) from being admitted into evidence because it was filed outside the fact discovery deadline. (Doc. 139). All of these actions were done on behalf of ACS and were committed by ACS's counsel and business executive. ACS chose to have BurnsBarton represent it along with its business executive, Clawson. (Doc. 43). Moreover, ACS chose to continue to have BurnsBarton represent it throughout these proceedings, even after the allegations of spoliation, false affidavits, and misconduct by Clawson came to light. Although not the sole reason for denying the motion to set aside the default, ACS's argument that its attorneys' conduct cannot be considered fails. *See Link*, 370 U.S. at 633–34 (In "our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent").

### iv. Conclusion

ACS does not argue in its brief that the actions of Clawson and its attorneys – false affidavits submitted under oath, spoliation of critical evidence, and lack of candor to the Court – did not benefit ACS. The Court finds that Clawson's acts were done in furtherance of his position to develop business for ACS and within the scope of his employment. Moreover, the Court finds that the actions of ACS's attorneys were done

for the benefit of ACS and with its knowledge. Clawson engaged in the spoliation of critical evidence that went to the heart of Plaintiffs' claims. Clawson's deliberate and willful actions, had they not been discovered, would have likely benefited ACS. All the while, ACS was represented together with its business executive, Clawson, presumably at the direction of its CEO, Zall. For all of these reasons, the Court finds that ACS, through its business executive Clawson, and its former attorneys, engaged in the culpable conduct that led to the entry of default.

Having determined that the first factor supports the entry of default, the Court will only briefly examine the other two factors. *See Franchise Holding II*, 375 F.3d at 925–26; *see also Brandt v. Am. Bankers Ins. Co. of Fla.,* 653 F.3d 1108, 1112 (9th Cir. 2011) ("A district court may exercise its discretion to deny relief to a defaulting defendant based solely upon a finding of defendant's culpability.").

### b.    Meritorious Defense

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010). All that is necessary to satisfy the "meritorious defense" requirement is to allege sufficient facts that, if true, would constitute a defense. "The question whether the factual allegation [i]s true" is not to be determined by the court when it decides the motion to set aside the default. *Id*. Rather, that question "would be the subject of the later litigation." *Id.*

Here, ACS Answered the Complaint and has defended throughout the case. (Docs. 22 and 23). The Court finds that the stricken Answer presented a meritorious defense, and this factor favors ACS.

### c.    Prejudice to Plaintiffs

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1095 (9th Cir. 2010). Plaintiffs do not argue that they

would be prejudiced if the default against ACS was set aside. Therefore, the Court finds that Plaintiffs would be prejudiced only as to additional costs to conduct further proceedings and the delaying of the case. The Court finds this factor to be neutral.

### C. Conclusion

There is ample evidence of bad faith and willful behavior from ACS's business executive, Clawson and its former attorneys. Indeed, ACS now recognizes Clawson's and BurnsBarton's bad actions, committed years ago, after strenuously defending and denying those actions previously. (Docs. 115, 168, 180, and 191). The Court previously concluded, as it reaffirms here, that the actions in this case amounted to "extreme circumstances" that warranted default being entered.

> The Court finds that the evidence and testimony overwhelmingly demonstrate that Defendants' and counsels' misconduct was willful and done in bad faith. *See Leon*, 464 F.3d at 958 (holding that the district court must make a finding of "willfulness fault or bad faith" for dismissal or default to be proper). Defendants have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings. *Leon*, 464 F.3d at 958.

(Doc. 222 at 29). Considering that "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice," and finding such culpable conduct present here, the Court finds that ACS has not established good cause to set aside the default. *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). Therefore, ACS's Motion will be denied.

### III. Motion for Additional Sanctions

The Court allowed Plaintiffs to seek additional sanctions in the form of attorneys' fees and costs.[15] (Doc. 222). Plaintiffs move for an award for fees and costs in the amount of $527,087.46. (Doc. 225). They seek the award to be assessed jointly and severally against Defendants ACS, Troy Clawson and Teri Clawson, and their former counsel, attorneys David Barton, Katya Lancero and the law firm of BurnsBarton, LLP.

---

[15] The Court notes that Plaintiffs have not yet moved for a damages hearing to establish the underlying damages of their claims.

(*Id.*)

"A court may levy a sanction on the basis of its own inherent power 'when a party has acted in bad faith, vexatiously, wantonly or, for oppressive reasons.'" *E. & J. Gallo Winery v. Gibson, Dunn & Crutcher LLP,* 432 F. App'x 657, 659 (9th Cir. 2011) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 55 (1991)). When exercising its inherent powers to sanction a party, the court can impose a sanction that makes the other "party whole for expenses caused by his opponent's obstinacy." *Chambers,* 501 U.S. at 46 (quoting *Hutto v. Finney,* 437 U.S. 678, 691 (1978)). In *Chambers,* the court imposed sanctions consisting of nearly a million dollars in attorney's fees after finding that defendant misled the court, violated court orders, and engaged in dilatory tactics. *Chambers,* 501 U.S. at 35–40. The Supreme Court held that in light of the egregious conduct, it "was within the court's discretion to vindicate itself and compensate" the plaintiff. *Id.*; *See also Miller v. City of Los Angeles*, 661 F.3d 1024, 1037–38 (9th Cir. 2011). When considering the amount of the sanctions, "all similar incidents of a party's past misconduct in a case are under review in determining the propriety of sanctions." *E. & J. Gallo Winery*, 432 F. App'x at 659. Moreover, courts may impose sanctions jointly and severally against multiple parties for their conduct. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir. 1994), as amended (July 25, 1994).

Here, the Court has repeatedly stated that the sanctionable conduct went to the heart of the claims alleged in the Complaint. Moreover, the Court found, based on the testimony of the forensic expert, that Clawson spoliated critical evidence shortly after the Complaint in this matter was filed. (Doc. 222). The long journey of this case through the litigation process, continuing with three days of hearings on the motion for sanctions and the entry of default, and culminating with this Order, all stemmed from that initial act in the early stages of this case. Based on the entirety of the record, the Court finds it reasonable to award to Plaintiffs the fees and costs stemming from the conduct of Defendants and finds that that conduct began when Clawson spoliated the evidence, which the expert testified was on or after August 13, 2015. (Doc. 184 at 54).

Plaintiffs note that they have voluntarily reduced their attorneys' fees request by more than 20%, "omitting unnecessary, duplicative, or excessive time, and deleting time related to tasks that would have bene performed even in the absence of misconduct by Defendants and their former counsel." (Doc. 225 at 6). Moreover, Plaintiffs do not seek to be awarded fees for the initial investigation of the case or the preparation and filing of the Complaint, because the spoliation of evidence had not yet occurred. The Court has reviewed the voluminous itemized billing entries of Plaintiffs' Counsel in this matter, and finds the fees billed to be reasonable under these circumstances. (Doc. 225-2). Moreover, the Court finds the hourly rates charged by the attorneys[16] to be reasonable. *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 187–88 (Ariz. Ct. App. 1983) ("Unlike public-rights litigation, and contingent-fee litigation, for example, in corporate and commercial litigation between fee-paying clients, there is no need to determine the reasonable hourly rate prevailing in the community for similar work because the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case.").

As to joint and several liability, the Court found that the BurnsBarton attorneys "facilitated and continued to cover up Clawson's fraud and their own irresponsible conduct." (Doc. 222 at 23). Although Lancero now asserts that she was inexperienced, nervous, and "had no procedurally proper forewarning when she took the stand," this does not excuse her conduct of engaging in semantics and being evasive on the witness stand.[17] (Doc. 238 at 6). Lancero also asserts that, "given the situation," she "made inaccurate statements, without intending to do so." (*Id.*) At any point during her examination, her supervisor, Mr. Barton, could have raised procedural concerns regarding

---

[16] Between $284.00 and $484.50 per hour was billed for partners, $212.50 to $276.25 per hour for associates and $35 per hour for law clerks. (Doc. 225 at 6).

[17] While Lancero and Barton claim they were blindsided by being called as witnesses at the hearing, Plaintiffs' Counsel informed Mr. Barton and Ms. Lancero over a week prior to the hearing that "we intend to call you both to testify." (Doc. 244-1 at 45). Ms. Lancero responded to that email by stating that "David [Barton] and myself will be present at the hearing on Friday." (Doc. 244-1 at 45). Lancero and Barton clearly had notice of Plaintiffs' intent to call them as witnesses.

her testimony, and Ms. Lancero could have returned to correct her "inaccurate statements" at the subsequent hearing days. Mr. Barton did not so object, and Ms. Lancero did not return. As to ACS and Clawson, the Court has held that they are culpable. Therefore, in order to make Plaintiffs whole, the Court will award Plaintiffs attorneys' fees and costs in the total amount of $527,087.46, jointly and severally against Defendants Troy and Teri Clawson, Defendant ACS, Attorney David Barton, Attorney Katya Lancero, and the BurnsBarton Law Firm.

## IV. Motion to Join Additional Parties

Plaintiffs also seek to join parties to this matter, claiming that those parties are indispensable for purposes of awarding joint and several sanctions. (Doc. 243). Plaintiffs seek to join the "marital communities" of David Barton and Katya Lancero, arguing that "in the absence of such joinder, complete relief **_may_** not be available to Plaintiffs." *Id.* at 1-2 (emphasis added). The Motion states that "Attorney Sturr refused to confirm whether Mr. Barton or Ms. Lancero were married, whether Osborn Maledon represented their spouses (if any), and refused to stipulate to joinder of their spouses (if any)." *Id.*

Rule 19 requires joinder of additional parties if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1). The Court notes that David Barton and Katya Lancero are not Defendants to this action and never have been parties. Barton and Lancero have entered limited appearances as intervenors in order to respond to the motion seeking sanctions against them personally. (Doc. 234). The Court granted the Motion to Intervene for these limited purposes only. (Doc. 237).

The Court finds that Plaintiffs have not met their burden of establishing that the joinder of Mr. Barton's wife and the spouse of Ms. Lancero "if any" is necessary. Therefore, this Motion will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that ACS's Motion to Set Aside the Default (Doc.

230) is **denied**.

　　　**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Additional Sanctions (Doc. 225) is **granted**.　Plaintiffs are awarded attorneys' fees in the amount of $490,589.72 and costs in the amount of $36,497.74 for a total amount of $527,087.46, jointly and severally against Defendants Troy and Teri Clawson, Defendant ACS, Attorney David Barton, Attorney Katya Lancero, and the BurnsBarton Law Firm.

　　　**IT IS FINALLY ORDERED** that Plaintiffs' Motion for Joinder of Additional Parties (Doc. 243) is **denied**.

　　　Dated this 3rd day of September, 2019.

Honorable Diane J. Humetewa
United States District Judge