Pavneet Singh Uppal, SBN 016805
Kris Leonhardt, SBN 026401
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Telephone: (602) 281-3400
Fax:  (602) 281-3401
puppal@fisherphillips.com
kleonhardt@fisherphillips.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Swisher Hygiene Franchise Corp.; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Troy Clawson and Teri Clawson, husband and wife; et al.,<br><br>Defendants. | No.  CV-15-1331-PHX-DJH<br><br>**PLAINTIFFS' CLOSING ARGUMENT TO ORDER TO SHOW CAUSE HEARING OF OCTOBER 7, 2022** |

Plaintiffs Swisher Hygiene Franchise Corp., Swisher International, Inc., and Swisher Hygiene, Inc. ("Plaintiffs"), by and through their undersigned counsel, hereby submit their written closing argument, as ordered by Court Order Doc. 365. Attached hereto as <u>Exhibit A</u> are Plaintiffs' Proposed Findings of Fact and Conclusions of Law.

## I. INTRODUCTION

Currently pending before the Court is Plaintiffs' Motion for Sanctions (Doc. 364) Against Intervenors Barton, Lancero and BurnsBarton Law Firm. The factual and procedural predicate is already part of the record and the Court is very familiar with the entirety of the record. Suffice it to say that, in response to the overwhelming misconduct of Intervenors, the Court was forced to hold three separate days of hearings on March 2, 15, and 22, 2018. 10/7/2022 OSC Ex. 1-4. After previously taking sworn testimony from Intervenors David Barton ("Barton") and Katya Lancero ("Lancero"), and considering the entire record in this matter, the Court ruled from the bench on March 22, 2018. In its bench ruling, the Court summarized the proceedings and its findings with respect to Intervenors' misconduct. 10/7/22 OSC Ex. 4, p. 251-276. Specifically, the Court found by "clear and convincing evidence that Defendant Clawson did engage in a fraud on the Court…[a]nd…**[his] counsel facilitated and continued to cover up that fraud.**" *Id.* at p. 271:21-25 (emphasis added). The Court further found that Intervenors gave sworn but "irresponsible testimony" that was "unprofessional, and it lack[ed] candor or appreciation for the seriousness of these proceedings." *Id.* at p. 271:2-6.

As to Lancero, the Court held that she engaged in "unhelpful wordplay," was "not credible," and her sworn testimony was "misleading at best and lacking in candor to the Court." *Id.* at p. 268:10-19; 270:7-19. As for Barton, who was Lancero's supervisor, the lead attorney and the partner assigned to the case, the Court found that Barton intentionally "attempt[ed] to replace a perjured sworn affidavit without alerting the Court to the fact that it was perjured…" *Id.* at p. 266:15-23. Finally, the Court found that Intervenors' misconduct and facilitation of fraud upon the Court went "directly to the heart of the allegations in the complaint." *Id.* at p. 273:24-25. Accordingly, given the magnitude of

1

Intervenors' misconduct, the Court ordered Barton and Lancero "self-report to the Arizona State Bar." *Id.* at p. 275:16-23.

During the recent October 7, 2022 OSC Hearing, counsel for Intervenors specifically stated that he had "no objection" when Plaintiffs moved for "admission of Plaintiffs' Exhibit[s] 1-4, which are the hearing transcripts for March 2, March 15 and March 22 of 2018." 10/7/22 TX, p. 33:15-19. Having agreed to the admission of the March 22, 2018 transcript which contains the Court's bench ruling, Intervenors cannot be heard to argue that any portion of that bench ruling (or the findings therein) are inadmissible in this matter.

The Court's March 22, 2018 findings regarding Intervenors' fraud upon the Court is not solely based upon misconduct committed during Intervenors' sworn testimony in March 2018. This Court found that Intervenors' sanctionable conduct spanned the life of the litigation, and included misconduct related to the filing and replacement of Defendant Clawson's perjured affidavit (10/7/22 OSC Ex. 4 p. 260:4-261:25; 266:10-23; 271:20-25); misleading statements made in response to Swisher's First Motion for Sanctions that the Southern Arizona Plan was never "formulated" (*Id.* at p. 268:4-22; 270:2-10; 273:6-14); Intervenors' deceptive statements included in Defendants' responses to Swisher's Second Motion for Sanctions that Intervenors should have used the term "finished" instead of "formulated" to describe the SAP (*Id.* at p. 268:4-22; 270:2-10; 273:6-14); and, most importantly, Intervenors' failure to preserve, search for, and/or produce relevant, discoverable information critical to the case (*Id.* at p. 265:4-20; 266:24-26; 270:20-27; 271:7-12).

Having facilitated these frauds upon the Court, Intervenors still seek to escape any consequences for their sordid misdeeds and misconduct. Indeed, at the OSC Hearing, Lancero reiterated that Intervenors had done "nothing wrong" and that the Court's proceedings were a "sideshow." OSC TX p. 64:9–67:22. Accordingly, there are two overriding interests at stake in this matter. First, the Court should vindicate itself because it has been victimized by Intervenors' facilitation of fraud. Intervenors' fraudulent conduct

2

is utterly unacceptable and must be sanctioned. In addition to their utter disrespect, admitted lack of candor, and outright fraud, Intervenors' actions have improperly consumed an enormous amount of judicial resources, including multiple days of Court hearings, a huge volume of briefing and countless hours which the Court has had to devote to parsing through Intervenors' schemes, excuses and outright lies.

For these same reasons, Intervenors have also greatly prejudiced Plaintiffs in this matter. This case was filed in 2015. Yet, more than seven years later, Plaintiffs are forced to relitigate Intervenors' misconduct in order to seek appropriate redress. Many plaintiffs would not have the stamina, fortitude, or financial resources to fight Intervenors' lack of candor, prevarications, and fraudulent conduct, in which case Intervenors would have succeeded with their sordid misdeeds. One is left to wonder how many times Intervenors have gotten away with the type of misconduct which they have committed in this case.

## II.    ARGUMENT

As noted above, Intervenors' fraud upon the Court is summarized in the Court's bench ruling of May 22, 2018, which has been admitted into evidence without objection. That bench ruling serves to summarize Intervenors' mendacious behavior, outright lies and the fraud which they visited both upon the Court and Plaintiffs. Although the page limitation applicable to this brief does not permit a discussion of each individual act of misconduct by Intervenors, the factual record is set forth in the March 2018 hearing transcripts, the Court's bench ruling of March 22, 2018, the Court's Orders at Docs. 222, 256 and 284, and the pleadings on file in this case, all of which are incorporated herein by reference. Some of the more egregious acts of fraud committed by Intervenors are discussed below.

In brief summary, the original complaint in this lawsuit was filed on June 21, 2015, followed by an amended complaint filed in July of 2015. 10/7/22 OSC Ex. 4, p. 21:20-22. Plaintiffs also filed a preliminary injunction which sought, first, to enjoin Defendants from soliciting Swisher employees and, secondly, from using or disclosing Plaintiffs' confidential information. *Id.* at p. 251:23–252:7. In response to the preliminary injunction,

on August 4, 2015, Defendants filed the Affidavit of Troy Clawson dated July 31, 2015. *Id.* at p. 252:8-15; 10/7/22 OSC Ex. 8. On March 22, 2018, the Court held that Clawson's Affidavit of July 31, 2015 was perjured. 10/7/22 OSC Ex. 4, p. 260:16–261:14. The perjured statements included Defendant Clawson's sworn representations to the Court, in paragraph 17 of his Affidavit, that: (1) he did not "provide any Swisher confidential information…to anyone at ACS;" and (2) that he did not "identif[y] any Swisher customers that ACS should go after." *Id.*; 10/7/22 OSC Ex. 8.

On May 4, 2016, the Quarles & Brady law firm withdrew as defense counsel and Intervenors appeared as Defendants' counsel. *Id.* at 253:2-6. Contemporaneous with the abrupt exit of Quarles & Brady, on or about April 26, 2016, Defendants belatedly produced a copy of a June 11, 2015 email from Defendant Clawson to the President of Defendant ACS, along with printouts of two documents which were attached to Clawson's email: (1) the "Accurate Northern Arizona Plan.docx;" and (2) the "Accurate Phoenix Arizona Plan.docx." 10/7/22 OSC Ex. 4, p. 261:12-24; 10/7/22 OSC Ex. 20, Doc. 103, p. 2). In his email dated June 11, 2015, by which Defendant Clawson forwarded to ACS the Northern Arizona Plan ("NAP") and Phoenix Arizona Plan ("PAP"), Clawson told Defendant ACS' President that he would "work on" a separate raiding plan for "Southern Arizona tomorrow" (the "Accurate Southern Arizona Plan" ("SAP")). 10/7/22 OSC Ex. 18, p. 3; Doc. 48-1.

Intervenors never looked for, preserved, or produced the SAP. Instead, Intervenors doubled down on Clawson's perjured Affidavit of July 31, 2015 and avowed to the Court that Defendant Clawson "***Never actually ended up formulating a plan for Southern Arizona.***" 10/7/22 OSC Ex. 4, p. 268:4-9; 10/7/22 OSC Ex. 18. The SAP, which Intervenors both failed to produce and actively hid by contending that it was never formulated, was more valuable than the NAP and the PAP because of the number and type of accounts included in the SAP as compared to the other two plans. 10/7/22 OSC Ex. 4, p. 262:23-263:1. As the Court is well aware, and as discussed in detail *infra*, Intervenors lied to the Court when they represented that the SAP was never formulated (Doc. 53)

4

because they knew of its existence. However, despite Intervenors' best efforts to ensure that the SAP was never discovered, Plaintiffs' computer expert found the SAP in unallocated space of Defendant Clawson's flash drive. 10/7/22 OSC Ex. 4, p. 266:6-13. The SAP is virtually identical to the NAP and PAP. *Id.*, p. 268:20-22.

### A. By Failing to Image and Preserve Defendant Clawson's Computer and Devices, Intervenors Executed a Plan Designed to Prevent the Discovery of the Southern Arizona Plan; Intervenors' Purported Excuses for Their Misconduct Are Nothing New and Were Previously Rejected by the Court.

On March 15, 2018, Plaintiffs' computer forensic expert, Mark Cardwell, testified before the Court. 10/7/22 OSC Ex. 2, p. 110-172. Cardwell testified that the SAP was "deleted on or after August 13 of 2015" while the NAP was "deleted on or after December 16 of 2015" – both well after the filing of the lawsuit and Clawson's perjured Affidavit of July 31, 2015. 10/7/22 OSC Ex. 4, p. 264:23–265:3. Accordingly, the Court held that "Clawson…deliberately destroy[ed]" the SAP "after the filing of the complaint" and that if Plaintiffs had not engaged Cardwell, "the Southern Arizona Plan and what is contained on it may have never been discovered." *Id.* at 266:1-4. The Court further held that the SAP is a "critical piece of evidence" and that "clearly Plaintiffs would have suffered further prejudice" if their computer expert had not found the SAP after it was deleted by Clawson. *Id.* at 266:4-7.

Despite the knowledge that this was a case concerning confidential information, Barton's years of experience, the critical nature of the SAP, the fact that the SAP was created on Clawson's computer, and Intervenors' knowledge that Clawson had emailed the NAP and PAP to Defendant ACS on June 11, 2015, Intervenors failed to take any reasonable steps to image and preserve the data on Clawson's computer and his flash drive. Based on the record, the SAP was "deliberately destroy[ed]" which the Court held constituted "spoliation of electronic discovery." *Id.* at 265:17-18. Intervenors actively aided in that spoliation by: (1) failing to have Clawson's computer and flash drive imaged; and (2) not instructing their client to stop using his computer until it was imaged. Intervenors' efforts to comply with their obligation to preserve critical ESI consisted of

5

"ask[ing] Mr. Clawson **to make his own best effort to create an image of his computer**." *Id.* at 42:12-13 (emphasis added). Notably, Intervenors gave no instructions to Defendant Clawson to preserve or image his flash drive on which the deleted SAP was ultimately found. 10/7/22 OSC Ex. 4, p. 262:6-13. Furthermore, although Intervenors did not actually produce Defendant Clawson's computer and flash drive for inspection until September of 2016, **it is undisputed that Clawson continuously used that computer from at least of July 2015 until September of 2016 and Intervenors never instructed him to stop using it until it was imaged**. 10/7/22 TX p. 42:5–47:19.

As Cardwell explained, Intervenors' malfeasance and failure to image or preserve Clawson's computer and devices was part of Intervenors' plan to "make the Southern Arizona Plan disappear" and to prevent its discovery. *Id.* at p. 51:7–52:5. Cardwell testified that he has never encountered a lawyer, especially a lawyer such as Barton who claims to have substantial experience in the area of noncompetes and trade secrets cases, who doesn't know that it is "impossible for a lay person [such as Defendant Clawson] to image a computer on his own." *Id*. at 46:13-19. So as to leave no doubt, expert Cardwell testified that imaging a computer requires a complex software program. Accordingly, Cardwell explained that the fact that Intervenor Barton left it to Clawson to "make his own best effort to create an image of his computer" was "wholly reckless and irresponsible for any attorney working with data." *Id.* at p. 42:20–44:5.

In addition, Cardwell testified that "foundationally it [wa]s crazy" for Intervenors to fail to instruct Defendant Clawson to stop using his computer until it was imaged. *Id.* at 47:8-22. Cardwell explained that there was a 14-month gap from the point that Clawson submitted his July 31, 2015 Affidavit until Cardwell received Clawson's computer in late September of 2016. *Id.* at p. 47:25–48:15. During that entire period, Clawson continued actively using his computer and was never instructed by Intervenors to stop doing so. *Id.* at p. 47:15–48:15. With respect to Intervenor's "plan" to cause the disappearance of the SAP, Cardwell explained that "short of using a wiping tool, just continuing to use the computer would be a good way you can count on that deleted data disappearing over

6

time." *Id.* at 48:13–50:25. Furthermore, according to Cardwell, who works almost exclusively with lawyers, an attorney like Barton with his self-professed expertise in trade secrets and noncompete law, would certainly know that allowing his client to continue using his computer before it was imaged would put "the data in unallocated space [such as the SAP]…continually at risk of being overwritten, corrupted or changed" and would render associated metadata unavailable. *Id.* at p. 45:21–51:6. Cardwell opined that by insisting that Plaintiffs not search unallocated space, failing to image Clawson's computer, and not instructing Clawson to discontinue using that computer, Intervenors knowingly engaged in a "plan" to make the SAP "disappear over time" by having it "completely overwritten or overwritten to some extent to make it unusable". *Id.* at 51:7–52:18.

The excuses that Intervenors have offered for their failure to ensure the imaging and preservation of Clawson's computer and devices have been previously rejected.[1] Indeed, Intervenors have failed to provide any explanation as to how it could possibly be reasonable or compliant with the rules of civil procedure for Intervenors to tell a lay person, such as Defendant Clawson with no background in computers, to "make his own best efforts" to image his computer while simultaneously failing to instruct him to stop using that computer. Confronted with these facts and his "plan" to make the SAP "disappear" at the OSC Hearing, Barton asserted that Defendant Clawson lacked the resources to have his computer properly imaged. Of course, the obvious alternative was for Intervenors to instruct their client to stop all use of the computer and to immediately turn it over to Plaintiffs for professional imaging, but they did not do so until late

---

[1] BurnsBarton's and its namesake partner Barton's failure to image and preserve Clawson's computer and devices is especially remarkable because BurnsBarton has repeatedly filed motions for sanctions before this same Court based on an opposing party's failure to image and preserve electronically stored information. *See* Vruner v. City of Phoenix, Case 2:18-cv-00664-DJH at Doc. 69 (BurnsBarton moved for sanctions arguing "that plaintiffs 'failed to take reasonable steps to preserve' electronically stored information…[because] plaintiffs should have taken an image of their social media posts and comments…to ensure that information relevant to this lawsuit was properly preserved"; Doc. 86 (same); and Doc. 99 (same)).

September of 2016. In addition, Barton admitted that corporate Defendant ACS paid all fees after April of 2016 and "Clawson's lack of resources ha[d] absolutely nothing to do with [Intervenors'] failure to ensure that his computer was imaged." 10/7/22 TX p. 191:12–192:2.

Furthermore, Lancero testified that, prior to turning over Clawson's computer and flash drive to Plaintiffs' expert, she attempted to prevent Plaintiffs from searching in unallocated space. 10/7/22 OSC Ex. 1, p. 50:12–51:16. Lancero conceded under oath that, if Plaintiffs had agreed to that demand, the SAP would never have been found. *Id.* The fact that Intervenors eventually relented from this demand does not in any way show an iota of good faith on their part because they undoubtedly knew that Plaintiffs would seek court intervention, if necessary, to search in unallocated space. Lastly, Intervenors' fabricated claim that they were relying on their own computer expert when they demanded that unallocated space not be searched, is another attempt to deceive the Court. During the October 7, 2022 OSC Hearing, Intervenors' expert Jefford Englander testified that he did not advise Intervenors to restrict Plaintiffs or Cardwell from searching in unallocated space. 10/7/22 TX p. 156:3-7.

**B.     Intervenors Replaced a Perjured Sworn Affidavit Without Notifying the Court That it was Perjured.**

During the bench ruling on March 22, 2018, the Court ruled that Defendants Clawson's July 31, 2015 Affidavit was perjured. Specifically, the Court stated that it:

> …finds that defendants Clawson created a false affidavit signed under penalty of perjury which contains multiple false statements. And the Court has already identified the false statements and in particular at:
>
> Paragraph 17. I have not solicited Swisher customers either before or after I left Swisher, nor have I identified any Swisher customers that ACS should go after.
> 18. I'm not in possession of any Swisher confidential information or property, nor did I ever provide any Swisher confidential information or property to anyone at ACS.

10/7/22 OSC Ex. 4, p. 260:16-261:1).

FP 45494072.1

At the very least, by April of 2016, when Intervenors were forced to produce the NAP and the PAP and file their so-called Notice of Errata (Doc. 42), they knew that Paragraph 17 of their client's July 31, 2015 Affidavit was completely false because the NAP and the PAP show that Clawson literally identified hundreds of Swisher customers that ACS should go after. 10/7/22 OSC Ex. 4, p. 227:19–228:14; 261:12-22; 10/7/22 OSC Ex. 18, p. 3; Doc. 48-1. Instead of notifying the Court regarding the clearly false, albeit sworn, statements in Paragraph 17 of Clawson's July 31, 2015 Affidavit, Intervenor Barton filed a so-called "Notice of Errata" on April 27, 2016 (Doc. 42) to which he attached a new affidavit from Clawson which no longer contained the lie that Clawson had not identified any Swisher customers to ACS. Exh. 14. In its bench ruling, the Court was rightly offended by Intervenor Barton's deceptive misuse of a notice of errata and noted that the errata "merely states 'Notifying the Court of an error appearing on page 4 of the Affidavit' and nothing more." 10/7/22 OSC Ex. 4, p. 266:8-23. The Court found that Mr. Barton's misuse of an errata was either: (1) "at the very least a misuse of a notice of errata…"; or (2) "at worst, it was an attempt [by Barton] to replace a perjured sworn affidavit without alerting the Court to the fact that it was perjured or that there were material misstatements of fact that go specifically to a claim in the complaint." *Id.* at 266:10-23. The Court specifically found "the latter [of these two possibilities] to be true" – e.g., that Barton deceived the Court by replacing a perjured affidavit without informing the Court that it was perjured. *Id.*

Barton's misuse of the "errata" was part of his plan to conceal his client's perjury and illustrative of his lack of candor and the facilitation of fraud upon both the Court and Plaintiffs. Intervenors' protestations to the contrary that, even if the notice of errata was improper, it was not somehow deceptive, have previously been rejected by the Court. Indeed, at the OSC Hearing, Barton offered nothing new to justify his misconduct. Barton, who was first admitted to practice law in 1992 and advertises his legal proficiency and competency when it suits his purposes, should not be allowed to claim that he knew of no other mechanism by which to file Defendant Clawson's replacement affidavit dated

9

April 21, 2016. 10/7/22 OSC Ex. 14; Doc. 4, p. 44:6–45:8. Indeed, there was nothing stopping Intervenors from filing the replacement affidavit under a pleading captioned "Notice to the Court of Incorrect Testimony Contained in Defendant Clawson's July 31, 2015 Affidavit" or something similar. In fact, at the OSC Hearing, Barton asserted that he now regrets having failed to submit a redline of Clawson's replacement affidavit to the Court, which would have shown the changes between his client's July 31, 2015 and April 21, 2016 affidavits. Of course, it has taken Barton more than four and a half years to make this exceedingly small concession to the obvious.

In addition, Intervenors have offered no excuse or explanation at all for their failure to correct Paragraph 18 of Defendant Clawson's July 31, 2015 Affidavit. Paragraph 18 states in relevant part that Clawson did not "provide any Swisher confidential information or property to anyone at ACS." 10/7/22 OSC Ex. 8. This exact statement reappears at Paragraph 18 of Defendant Clawson's replacement affidavit dated April 21, 2016 at 10/7/22 OSC Ex. 14. However, even though the Court has ruled that the foregoing statement is clearly false and perjured, Intervenors took no steps to correct it. *Id.*

Thus, Intervenors facilitated the fraudulent misrepresentation to both the Court and Plaintiffs that Clawson never "provide[d] any Swisher confidential information or property to anyone at ACS" and still continue to maintain that position. Barton was physically present in Court when the bench ruling was issued on March 22, 2018. In that ruling, the Court ruled that the NAP, PAP and SAP were all replete with Swisher's highly confidential information. The Court even went so far as to explain that "on April 26 of 2016, an e-mail written by Defendant Clawson to the President of ACS --…that e-mail is dated June 11, 2015 -- was produced in discovery to Plaintiffs. And this e-mail contains 129 Swisher customers, **including confidential information** about those customers…" *Id.* at 261:12-22 (emphasis added). The Court also ruled that the SAP, which Intervenors never produced or preserved, consisted of "protected information…that contains customer information, their lists, salaries, employee salaries."

FP 45494072.1

Barton was questioned at the OSC Hearing as to why he filed Defendant Clawson's replacement April 21, 2016 affidavit, even though it still asserts that Clawson had never provided any of Swisher's confidential information to ACS. Instead of admitting that he had failed to correct this perjury, Barton amplified his fraud upon the Court and testified that neither the NAP nor the PAP contained any of Swisher's confidential information, notwithstanding the bench ruling to the contrary. *Id.* at 196:2-197:6. At the OSC Hearing, Barton testified as follows:

> Q. Okay. Is it your position as you sit here today…that the Northern Arizona Plan and the Phoenix, Arizona plan, which Mr. Clawson did in fact provide to someone at ACS, specifically its president, contained no confidential information?
>
> A. That's correct.
>
> Q. Okay, but that's not how the Court has ruled; right?
>
> A. I don't know what the Court ultimately ruled. 10/7/22 OSC Ex. 4, p. 197:1-5.

Barton's feigned ignorance of the Court's bench ruling that the NAP and the SAP contained highly confidential information is yet another lie and illustration of his fraudulent conduct.

### C. Intervenors Lied to the Court that the Southern Arizona Plan Was Never "Formulat[ed]" and Their Attempt to Recant Their Own Sworn Testimony Must be Rejected.

On March 2, 2018, Lancero brazenly lied to the Court, engaged in "wordplay," violated her duty of candor, and facilitated fraud upon the Court. 10/7/22 OSC Ex. 4, p. 266:24–271:25. On or about April 26, 2016, Defendants belatedly produced a copy of a June 11, 2015 e-mail from Clawson to ACS' President, attached to which were the NAP and PAP. 10/7/22 OSC Ex. 4, p. 261:12-22. Clawson's e-mail of June 11, 2015 told ACS that he would "work on" a separate rating plan for "Southern Arizona tomorrow." 10/7/22 OSC Ex. 18, p. 3. Accordingly, having produced the NAP and the PAP, but not the much more valuable SAP, Intervenors were forced to explain why the SAP had not been produced. In response to Plaintiff's First Motion for Sanctions at Doc. 48, Intervenors filed a response on June 13, 2016 which told the Court that "[a]lthough Clawson's e-mail

11

1  to [ACS' President] Zall stated that he would 'work on Southern Arizona tomorrow,'
2  Clawson **never actually ended up formulating a plan for Southern Arizona**." 10/7/22
3  OSC Ex. 18, p. 3 (emphasis added). Intervenor Lancero's sworn testimony on March 2,
4  2018, clearly shows that Intervenors lied to the Court when they represented to the Court
5  that Clawson had not formulated a plan for Southern Arizona.
6       On March 2, 2018, Lancero repeatedly admitted under oath that Intervenors were
7  aware that Defendant Clawson had started preparing the SAP and that the SAP existed in
8  some form when they told the Court on June 13, 2016 that the SAP had never been
9  formulated. Lancero testified as follows:

> Q. (BY MR. UPPAL) Thank you, Your Honor.
>
> Ms. Lancero, when did BurnsBarton first know or first learn of the existence of the Accurate Southern Arizona Plan?
>
> A. I was told that there was some words put on the page...
>
> . . .
>
> Q. How did it happen? Did you ask him a question such as, "Hey, your e-mail states I'll work on the Southern Arizona Plan. Where is it? Plaintiffs are asking for it." What is the context in which your client came to tell you that the Accurate Southern Arizona Plan were just some words on a page?
>
> A. You are correct it was the e-mail that Mr. Clawson sent to Mr. Zall saying I will work on Southern Arizona tomorrow that prompted our discussion.
>
> Q. All right. So let me see if I have this right. You saw Mr. Clawson, defendant Clawson's e-mail to Mr. Zall, and you noted the section of that e-mail that said tomorrow I'll work on Southern Arizona; is that right?
>
> A. Yes.
>
> Q. And that prompted you, Ms. Lancero, to ask Mr. Clawson where is the Southern Arizona Plan?
>
> A. I asked him did you work on the Southern Arizona Plan the next day as your e-mail stated.
>
> Q. And what was his reply?
>
> A. His reply was that he put some words on a page but was heading to vacation and could not finish the Southern Arizona -- the Southern Arizona document, list. Exh. 1 pp. 32, l. 2 – 33, l. 21

25       According to Lancero's sworn testimony, Clawson's e-mail of June 11, 2015
26  (which Intervenors produced on April 26, 2016) prompted her to ask Clawson whether he
27  had worked on the SAP, to which Clawson replied that, although he had not finished it,
28  he had started the SAP by putting "words on a page." Thus, Intervenors were clearly aware

FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
(602) 281-3400

12

that the SAP existed in some format when they lied and told the Court on June 13, 2016 that Clawson never "formulat[ed]" the SAP. But to leave no doubt that Intervenors were aware of the existence of the SAP prior to June 13, 2016, Plaintiffs also elicited the following testimony from Lancero:

> Q. Did you, Ms. Lancero, make any kind of inquiry or effort to actually look at the Southern Arizona Plan before your firm on June 13, 2016, told the Court that it had never been formulated?
>
> A. No.
>
> Q. But you knew it existed in some format, right?
>
> A. No. It was extremely downplayed.
>
> Q. That's fine. But even if it was downplayed, you knew it existed in some format; isn't that right?
>
> A. To the extent that words on a page, sure.
>
> Q. So that's a yes?
>
> A. **To the extent that words on a page can constitute existing, then yes**.
> *Id.* p. 36:11-23 (emphasis added)

Finally, the Court itself elicited the following confirmation from Lancero that Intervenors knew of the existence of the SAP when they told the Court that it had not been formulated:

> [BY THE COURT]
>
> Q. And then just so I'm clear, you have testified that the description that you were given about what is now referred to as the Southern Arizona Plan was described as words on a page.
>
> Let me see if I understand the testimony here. How did that -- How did he describe that? Was there a question of was there a Southern Arizona Plan formulated, and was the response no, there's just some words on a page, or how did that conversation come up?
>
> A. Absolutely, Your Honor. Mr. Clawson has three binders, one for Northern Arizona, one for Phoenix, and one for Southern Arizona. **So, first of all, in response to his e-mail to Mr. Zall on June 11th, 2015, that he would work on Southern Arizona tomorrow, that instigated this conversation**, along with the fact that he has a third binder for Southern Arizona, **asking did you create the Southern Arizona Plan. And he said that he had begun to create one and had put some words on a page but didn't finish it**…
> *Id.* at p. 56:14-57:5 (emphasis added)

Despite testifying at least three times on March 2, 2018 that Intervenors knew as of June 13, 2016, that the SAP had been started and that it existed in some form, Intervenors now claim otherwise. During the OSC Hearing on October 7, 2022, Lancero

recanted all of her prior sworn testimony on this subject, **including even her exchange with the Court quoted above.** 10/7/22 TX p. 68:11–72:18; 78:15–80:12; 84:11-21. Now, Lancero would have the Court believe that, despite repeatedly testifying that she was aware of the existence of the SAP since at least June 13, 2016, she actually only learned of its existence in January of 2017. The Court previously rejected Lancero's attempt to recast her repeated sworn testimony as the product of a mistake and Intervenors have offered nothing new that would merit a different conclusion. In fact, on November 16, 2018, Intervenors filed a brief in which they argued that, contrary to Lancero's sworn testimony, on March 2, 2018, "Mr. Barton and Ms. Lancero never had any information that a Southern Arizona Plan existed until January 13, 2017…" Doc. 238, p. 3. The Court was unimpressed, rejected the excuses offered by Intervenors for their misconduct, and held that: (1) Lancero misled and lied to the Court; (2) "Mr. Barton later admitted in a Court filing that Ms. Lancero did not answer truthfully"; and (3) "[t]hat counsel 'consulted with ethics attorneys' regarding Lancero's testimony does not change the record before the Court." Order dated May 14, 2020 (Doc. 284 p. 17).

The only explanation that Intervenors have offered in support of Lancero's effort to recant and disown her prior testimony is that she was purportedly unprepared when she testified on March 2, 2018. 10/7/22 TX p. 99:12-15. This, too, is a meritless excuse because during the hearing, "Lancero was afforded protections equivalent to those afforded to criminal defendants." Doc. 284, p. 17. Furthermore, as the Court has previously opined, prior to her March 2, 2018 testimony, Lancero had every incentive and a full opportunity to fully prepare because "Plaintiffs noticed Mr. Barton and Ms. Lancero as witnesses, including [providing] an extensive list of topics on which they intended to question them…Barton and Lancero were thus on notice of the potential that they could be called as witnesses." *Id.* p. 16, fn. 10.

In any event, there is no reason to disregard Lancero's candid testimony on March 2, 2018 in favor of the completely scripted and revised version of events that Intervenors offered during the October 7, 2022 OSC Hearing. If Lancero wished to recant

14

her testimony, the time to do so was during the second or third days of hearings which the Court conducted on March 15 and 22, 2018. Although Lancero alleges that she fell ill on March 15, 2018, she has offered no excuse whatsoever for her failure to appear and correct the record on March 22, 2018. Intervenors were not willing to risk putting Lancero back on the stand because she undoubtedly would have dug a deeper hole and presented additional lies to the Court under oath. The fact that Intervenors' paid-for expert, Lynda Shely, purportedly advised Lancero that Barton had adequately corrected the record is of no consequence. The record speaks for itself, and Shely was not even present to evaluate whether Lancero's dissembling, unprofessional and wholly lacking in candor testimony to the Court on March 2, 2018 required her to reappear in order to recant her own prior sworn statements.

### D. Intervenors' Belated Acknowledgement At the OSC Hearing That the Southern Arizona Plan is "Formulated" Confirms that Lancero and Barton Previously Lied Under Oath.

On March 2, 2018, when presented with a physical copy of the SAP, Lancero "continued to testify that the Southern Arizona Plan was not finished, nor was it formulated, and that it was simply words on a page." 10/7/22 OSC Ex. 4, p. 268:4–269:13. The Court found that these statements were "lacking in candor to the Court…because one need only look at the Northern Arizona Plan, the Phoenix Plan, and the Southern Arizona Plan, and they are nearly identical." 10/7/22 OSC Ex. 4, p. 268:10-22. There was simply no reason for Intervenors to testify that, while the NAP and PAP were formulated, the nearly identical SAP was not. Nevertheless, Lancero so testified on March 2, 2018. *Id.* Perhaps even more astoundingly, Barton, who testified on March 15, 2018, almost two weeks after Lancero, also testified that the SAP was not formulated "even in the face of the actual document." *Id.* at p. 269:14-19. Barton, likewise, violated his duty of candor to the Court and simply lied under oath.

It is important to note that Barton and Lancero's sworn insistence that the SAP was not formulated, even after being shown an actual copy of the SAP while they were on the witness stand, confirms their intent to facilitate a fraud upon the Court. Indeed the very

15

FP 45494072.1

reason that Barton and Lancero insisted under oath in March of 2018 that the SAP was not formulated is because they had previously told the Court in writing on June 13, 2016 that "Clawson never actually ended up formulating a plan for Southern Arizona." As of June 13, 2016, Intervenors knew the SAP existed, but nevertheless defrauded the Court by asserting that it was not formulated.

At the OSC Hearing, Lancero and Barton finally conceded that the SAP was, in fact, formulated. 10/7/22 TX p. 77:10-17; 194:25–195:4. It took Intervenors more than four and a half years to concede the obvious, and they deserve no reward for disowning their prior sworn testimony. Indeed, Lancero admitted at the OSC Hearing that if she and Barton had truthfully disclosed in June of 2016 that the SAP existed but allegedly was not finished, Intervenors would have faced an immediate demand for production of the SAP. 10/7/22 TX p. 89:2-9. Thus, Intervenors' belated acknowledgment that the SAP is formulated clearly serves to prove that they lied to the Court on June 13, 2016, March 2, 2018, and March 15, 2018, when they testified to the contrary. Notably, Intervenors do not contend that their prior false testimony that the SAP was not formulated was a product of a mistake.

### E. Sanctions Should Be Imposed Upon Intervenors For the Fraud Which They Have Visited Upon the Court and Plaintiffs.

District courts "have inherent authority to discipline lawyers." *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1182, 1131 (9th Cir. 1995). Here, the Court's bench ruling of March 22, 2018 was admitted into evidence without objection from Intervenors. That bench ruling contains findings by clear and convincing evidence that Intervenors facilitated and continued to cover up their client's fraud upon the Court. 10/7/22 OSC Ex. 4, p. 271:21-25. In addition, the Court further found that Intervenors were not credible, gave "irresponsible testimony," and lacked candor to the Court. *Id.* at 271:2-6. Moreover, Plaintiffs' expert explained that Intervenors did not image or preserve their client's computer and devices, or instruct him to stop using his computer, in furtherance of their scheme to make the SAP disappear. Barton's misconduct was so extreme that the Court

FP 45494072.1

found that he "attempt[ed] to replace [his client's] perjured sworn affidavit without alerting the Court to the fact that it was perjured…" *Id.* at 266:5-23. Furthermore, despite knowing that the SAP existed in some form, Intervenors lied and told the Court that this plan was never formulated. Even after being confronted with the SAP on the witness stand in March 2018, Intervenors continued to lie and claim that it was not formulated. At the OSC Hearing, both Barton and Lancero essentially acknowledged that they lied in March of 2018 by conceding that the SAP is in fact formulated – but it took them four and a half years to do so.

In summary, Intervenors' misconduct is so exceptional and of such magnitude that it proves that they attempted (and very nearly succeeded) in "defiling the very temple of justice." *Fink v. Gomez*, 239 Fed.3d 989 992 (9th Cir. 2001) ("actions constituting a fraud upon the court or actions that defile the very temple of justice are sufficient to support a bad faith finding.") (internal quotations omitted). Accordingly, Swisher requests sanctions against Intervenors, jointly and severally, pursuant to 28 U.S.C. §1927 and the Court's inherent powers to fashion appropriate sanctions for abuses of the judicial process).

### III. CONCLUSION

For the above and foregoing reasons and based on the factual record, the Court should sanction Intervenors for their bad faith misconduct, order them to self-report to the State Bar of Arizona and reissue its findings that: (1) there is "clear and convincing evidence that Lancero and Barton facilitated and continued to cover up [defendant] Clawson's fraud and their own irresponsible conduct" (Doc. 222, p. 23); (2) former defense counsel "Mr. Barton and Ms. Lancero were not credible and lacked candor to the Court in their testimony of their clients" (Doc. 256, p. 5); (3) former defense "counsel's misconduct was willful and done in bad faith" (Doc. 222, p. 29); and (4) former defense counsel attempted, and nearly succeeded, in "defil[ing] 'the very temple of justice'" (Doc. 284, p. 18). In addition, upon sanctioning Intervenors, Plaintiffs respectfully request that they be permitted a period of thirty (30) days to file a new motion for attorneys' fees and costs against Intervenors for their misconduct.

FP 45494072.1

RESPECTFULLY SUBMITTED this 21st day of October 2022.

FISHER & PHILLIPS LLP

By: s/ Pavneet Singh Uppal
    Pavneet Singh Uppal
    Kris Leonhardt
    3200 N. Central Avenue, Suite 1550
    Phoenix, Arizona 85012-2487
    Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant(s):

William G. Klain
George H. King
David C. Turnbull
LANG & KLAIN, P.C.
6730 N. Scottsdale Road, Suite 101
Scottsdale, AZ 85253
Attorneys for Defendants Clawson

Andrew Abraham
Ralph D. Harris
Daryl D. Manhart
BURCH & CRACCHIOLO, P.A.
702 E. Osborn Road, Suite 200
Phoenix, AZ 85014
Attorneys for Accurate Chemical Acquisition, Inc.

Geoffrey M.T. Sturr
Jeffrey Molinar
John S. Bullock
OSBORN MALEDON, P.A.
2929 N. Central Avenue, Suite 2100
Phoenix, AZ 85012
Attorneys for Intervenors David Barton, Katya Lancero and BurnsBarton LLP

C. Christine Burns
BurnsBarton PLC
2201 East Camelback Road, Suite 360
Phoenix, AZ 85016
Attorneys for Intervenors David Barton, Katya Lancero and BurnsBarton LLP

  s/ Christine Logan

FP 45494072.1