**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Swisher Hygiene Franchise Corporation, et al.,

                Plaintiffs,

v.

Troy Clawson, et al.,

                Defendants.

No. CV-15-01331-PHX-DJH

**ORDER**

This case is on remand from the Ninth Circuit Court of Appeals.  On appeal, the Ninth Circuit panel determined that Defendants' attorneys, David T Barton, Katya M Lancero, and the BurnsBarton Law Firm (hereafter, "Intervenors"), received insufficient notice that they were at risk of being sanctioned by this Court. (Doc. 347-1 at 4).  So, the Ninth Circuit vacated this Court's sanction award against the Intervenors and remanded the case for further proceedings consistent with its decision.  (*Id.*)  Plaintiffs Swisher Hygiene Franchise Corp., Swisher Hygiene, Inc., and Swisher International, Inc., (collectively, "Swisher") have since filed a renewed Motion for Sanctions against Intervenors, jointly and severally, for their litigation misconduct.  They seek these sanctions under 28 U.S.C. § 1927 and the Court's inherent powers.  (Doc. 354 at 2).[1]

## I.    Background

Swisher initiated this case in state court almost eight years ago to stop and remedy the unlawful solicitation and competition of a former employee and his new employer.

---

[1] The Motion is briefed.  (Docs. 361; 364).

Swisher and Defendant Accurate Chemical & Services ("ACS") are competitors in the commercial hygiene products industry.  (Doc. 256 at 2).  Defendant Troy Clawson ("Clawson") worked for Swisher as an Arizona Sales Manager, and then Director from 2011–2015. (*Id.*)  During that time, Mr. Clawson signed a Confidentiality and Noncompete Agreement (the "Agreement") that restricted Mr. Clawson's use of Swisher's confidential information and ability to solicit Swisher customers for two years in the event Mr. Clawson left its employ.  (Doc. 8-1).  Mr. Clawson left Swisher in June 2015 to become ACS's senior business development executive.  (Doc. 256 at 2).

Swisher filed suit against Mr. Clawson and ACS ("Defendants") in July 2015 seeking legal and injunctive relief.  After Defendants removed the matter to federal court, Swisher filed an Amended Complaint (Doc. 8).  Swisher titled its filing "First Amended Complaint and Application for Preliminary and Permanent Injunction" but did not file or make the legal arguments for a preliminary injunction in the pleading.  (*See generally Id.*)  The Amended Complaint alleged that Mr. Clawson breached the Agreement with Swisher by (1) soliciting Swisher employees to join ACS; and (2) misappropriating Swisher's confidential information.  (*Id.*)  Swisher specifically sought to enjoin Defendants from soliciting any Swisher employee for two years and from using or disclosing any information gathered, prepared, or assembled on behalf of Swisher.  (*Id.*)

On July 31, 2015, ACS filed a response to Swisher's preliminary injunction request with an affidavit from Mr. Clawson that stated:

> I have not solicited Swisher customers either before or after I left Swisher, nor have I identified any Swisher customers that ACS should go after. I am not in possession of any Swisher confidential information or property, nor did I ever provide any Swisher confidential information or property to anyone at ACS.

(Doc. 24-1, ¶¶ 17–18) ("Original Affidavit").   On August 5, 2015, the Court advised Swisher in an Order that it would not consider its request for a preliminary injunction absent a separate motion under Rule 65 that was supported by legal authority.  (Doc. 25).  Swisher then withdrew its request for a preliminary injunction, citing the state court's

1   failure to set a return hearing on the motion after its filing.  (Doc. 27).

2        At this time, ACS was represented by non-parties Mr. Craig J. O'Loughlin, Eric B.

3   Johnson, and Adiba Jurayeva, and the Quarles & Brady law firm, and Intervenors

4   represented Mr. Clawson.  (Doc. 380-1 at 1).  Discovery commenced.

### A.   Production of Email from Mr. Clawson to ACS President Zall and Mr. Clawson's Amended Affidavit

On or about April 26, 2016, Defendants responded to Plaintiff's discovery requests.

In that production was a copy of a June 11, 2015, email from Mr. Clawson to ACS President

Bradley Zall ("Zall") with two attachments: (1) the "Accurate Northern Arizona

Plan.docx," and (2) the "Accurate Phoenix Arizona Plan.docx." (Doc. 50) ("Zall Email").[2]

In the email, Mr. Clawson identifies approximately 129 Swisher "customers that we need

to concentrate on," the approximate value of these customers, who to contact to solicit the

customers, the customer buying history, and the identities of Swisher employees who

managed the customer relationships.  (*Id.*)  In that same email, Mr. Clawson also told Zall

that he would "work on Southern Arizona tomorrow."  (*Id.*)  In this same production to

Swisher, Defendants also produced a red-lined version of Mr. Clawson's Original Affidavit

that deleted the representation that Mr. Clawson had not "identified any Swisher customers

that ACS should go after," (Doc. 48-3), and changed the execution date to April 2016

("Amended Affidavit").

The following day, Mr. Clawson, through his attorney Barton, filed his Amended

Affidavit with the Court as a "Notice of Errata."  (Doc. 42).  The Notice of Errata did not

explain how the Amended Affidavit differed from Mr. Clawson's Original Affidavit but

simply stated that Defendants "hereby notify the Court of an error . . . in the Affidavit of

Troy Clawson."  (Doc. 42).

About a week later, on May 4, 2016, ACS's attorney O'Loughlin moved to

---

[2] Various docket entries in this matter have been sealed because of the confidential information they contain.  The Court's citation and reference to these documents does not reference any of the confidential information therein, e.g., names of customers, employee salaries, etc., but generally describes their contents, as the parties have also done in their briefings.

1  withdraw from representation of ACS and ACS sought to substitute in Intervenors as

2  counsel.  (Doc. 43).  The motion was granted the next day.  (Doc. 44).

3  **B.**    **Swisher' First Motion for Sanctions (Doc. 48)**

4  Following Defendants' production and Notice of Errata filing, Swisher sought

5  sanctions against Defendants "for willfully, knowingly, and in bad faith offering false

6  testimony and evidence, including by not limited to, filing a perjured affidavit by

7  Defendant Troy Clawson." (Doc. 48 at 1).  Swisher also argued that Defendants attempted

8  to shield the new information from the Court by failing to disclose that the Original

9  Affidavit was being replaced by one that was substantially different.[3]  (*Id.*)  Swisher

10  claimed that "[b]ut for Clawson's sworn affidavit, Plaintiffs would have continued to

11  pursue their preliminary injunction request.  Plaintiffs' request for injunction was well-

12  founded and could have halted Defendants' unfair competition against Swisher.

13  Defendants' perjury served to cause Swisher to withdraw its well-founded and justified

14  request for preliminary injunction." (Doc. 48 at 11).  Swisher sought a negative inference

15  jury instruction regarding the alleged perjury and an order precluding Defendants from

16  arguing that they did not make use of Swisher's confidential client information.  (*Id.*)

17  Defendants' Response, filed on June 13, 2016, claimed (1) Mr. Clawson did not

18  knowingly make a perjured statement in his Original Affidavit, which was drafted by

19  ACS's prior counsel, and Mr. Clawson and ACS merely corrected ambiguities in the

20  affidavit; (2) Mr. Clawson did not take any confidential information with him when he left

21  Swisher; and (3) Mr. Clawson did not use Swisher's confidential information to write his

22  plans for developing ACS's business in the Zall Email.  (Doc. 53 at 1–2).  Defendants

23  explained:

24  [O]nce Clawson and Accurate considered Clawson's June 11 email to Zall
25  outlining his plans to develop Accurate's business in the context of broader
   discovery, Clawson and Accurate promptly corrected the Affidavit. Clawson
26  and Accurate sent Swisher's counsel both the amended affidavit and a red-

27
─────────────────────
28  [3] Swisher also claimed that the Zall Email and its attachments showed Clawson's Amended
    Affidavit still contained false statements regarding use of Swisher confidential information
    that Defendants did not remove or amend.  (Doc. 48 at 9).

1
2
3
4
5

> lined version of the original affidavit to make sure it fully understood what
> changes were being made to the Affidavit. Even though Clawson's email was
> not responsive to any of Swisher's discovery requests and not subject to
> disclosure under Rule 26(a)(1)(A)(ii) of the Federal Rules of Civil Procedure,
> Clawson and Accurate decided to disclose the email nevertheless in a
> supplemental disclosure.

6
7
8
9
10

(Doc. 52 at 6).   Defendants also disputed Swisher's contention that it relied on Mr. Clawson's Original Affidavit in withdrawing its motion for preliminary injunction.   (*Id.* citing Doc. 27 at 2–3).   Defendants pointed to Swisher's Notice of Withdraw, which simply stated that Swisher was withdrawing its motion because too much time had passed since the filing of the Complaint and no hearing had been set.   (*Id.*)

11
12
13
14
15
16
17
18
19
20
21
22

On December 7, 2016—before the Court ruled on Swisher's First Motion for Sanctions and before Swisher's expert disclosures were due—Defendants filed a Motion for Partial Summary Judgment. (Doc. 71).   Defendants argued, in part, that Swisher's claims failed as a matter of law because it had no evidence showing that Mr. Clawson or ACS misappropriated confidential information or solicited customers.   (*Id.* at 20).   Swisher responded by, among other things, pointing to Defendants' production of the Zall Email that included the Phoenix and Northern Arizona Plans.   (Doc. 88 at 2).   Plaintiff also said its computer expert, Mark Cardwell ("Cardwell") had recently discovered a deleted file from Mr. Clawson's laptop and flash-drive that was entitled "Accurate Southern Arizona Plan," a document Defendants had never produced, and that Mr. Clawson had represented in his response to the first Motion for Sanctions that he had "never actually ended up formulating." (Docs. 88 at 3–4; 89-1).

23
24
25
26
27
28

Mr. Cardwell's supporting Declaration also contained findings relevant to Mr. Clawson's spoliation of evidence, namely the Phoenix, Northern, and Southern Arizona Plans (collectively, "the Plans").   Specifically, in paragraph 23, Mr. Cardwell averred that four "carved" files were "recovered from unallocated space" and, as a result, "we can say with certainty that these documents existed as active files on the Storage Media at some time prior to their deletion . . . ." (Doc. 139-1 at ¶ 23).   In paragraph 30, he stated the carved

files he found above were titled, "Accurate Phoenix Arizona Plan; Accurate Southern Arizona Plan; and Accurate Northern Arizona Plan." (*Id.* at ¶ 30).  He explains that "based on the Windows event log files [the] documents bearing the foregoing file names existed on the Storage Media and the fact that they are no longer in allocated space on the Storage Media means that they were deleted." (*Id.*)  Mr. Cardwell also concluded that the Southern Arizona Plan "must have been deleted on or after August 13, 2015." (*Id.*)  He further opined that the Accurate Phoenix Arizona Plan "must have been deleted on or after October 20, 2015," and the Accurate Northern Arizona Plan "must have been deleted on or after December 16, 2015." (*Id.*)

On November 7, 2017, Defendants filed a Motion to Strike (Doc. 139) paragraphs 23 and 25–30 of Mr. Cardwell's February 8, 2017, Declaration that related to the spoliation of the Plans.  Defendants argued this information had not been part of Swisher's expert disclosure and written report that was due on December 21, 2016, and that they would be prejudiced if Mr. Cardwell were allowed to testify on the late-disclosed information. (Doc. 139 at 2).  Alternatively, Defendants asked the Court for an opportunity to retain a rebuttal expert on the issue. (*Id.*)

In their Motion to Strike, Defendants offer that "Plaintiffs may try and argue that it was Mr. Clawson's conduct in allegedly deleting the action plans that prevented Cardwell from timely disclosing his opinions.  In truth, however, there is no evidence that Defendants did anything to delay Plaintiff's review of the data in question." (Doc. 139 at 6).  Swisher refuted this last contention, arguing Mr. Cardwell had not discovered the files earlier, and thus timely opined on these findings, because Mr. Clawson failed to preserve evidence and deleted those files. (Doc. 142 at 9).  Only after Swisher noticed that the Plans were not included in the data reviewed by Mr. Cardwell had Swisher realized the need for additional efforts to find them. (*Id.*)  Swisher said Mr. Cardwell was able to recover the deleted files from the allocated space on February 2, 2017, and his discovery was disclosed to Defendants on February 8, 2017. (*Id.*)

///

1    **C.    Second Motion for Sanctions (Doc. 103)**

2        Before the Court had ruled on Swisher's First Motion for Sanctions, on March 9,

3    2017, Swisher filed a second Motion for Sanctions (Doc. 103) against Defendants, this

4    time seeking default judgment.[4]  In this second Motion, Swisher reiterated the arguments

5    it made in its response to Defendants Motion to Strike.  (*Id.*)  Swisher explained that Mr.

6    Cardwell had recently examined Mr. Clawson's laptop and thumb drive and found traces

7    of a document on the thumb drive titled "Accurate Southern Arizona Plan" in unallocated

8    space, indicating it had previously been deleted on or after August 13, 2015, or after Mr.

9    Clawson was aware of his duty to preserve evidence.  (*Id.* at 3–4).  Mr. Cardwell recovered

10   the document.  (Doc. 103-1 at 23).

11       Swisher said Mr. Clawson's Southern Arizona Plan identified approximately 90

12   Swisher customers to be brought over to ACS.  (Doc. 103 at 3).  The Southern Arizona

13   Plan also listed Swisher employees "Worth Bring Over and Cost of Doing so," and

14   identified their salaries. (Doc. 91-1).  Accordingly, Swisher asserted that "Defendants again

15   lied to the Court in response to the Plaintiffs' Motion for Sanctions" when Defendants

16   stated in its sworn, verified Response to Swisher's first Motion for Sanctions that Mr.

17   Clawson had "never actually ended up formulating a plan for Southern Arizona."  (Doc.

18   103 at 3).    Swisher also argued that "[t]he Accurate Southern Arizona Plan, which

19   Defendants told the Court had 'never' been formulated, was deliberately deleted, and

20   spoliated by Defendants prior to Defendants' production of Clawson's laptop and flash

21   drive for inspection by Plaintiffs' ESI [("electronically stored information")] expert." (*Id.*

22   at 4).

23       In Response, Defendants contended that Mr. Clawson's representation to the Court

24   that the Southern Arizona Plan was "never formulated" was not perjurious.  (Doc. 115).

25   Defendants argued that "[t]he mistake at issue is one of poor word choice—not fraud.  They

26   said counsel should have used the word 'finished' instead of 'formulated' in the legal brief

27   submitted to the Court" on June 13, 2016.  (*Id.* at 1).  Defendants also argued that no

28   ---
[4] The Court ultimately denied the first Motion for Sanctions as moot because Swisher's
Second Motion encompassed the misconduct alleged in the first Motion.  (Doc. 105).

violation of Rule 37(e) occurred because Swisher now had the Southern Arizona Plan and its embedded metadata, and sanctions were further unjustified because Defendants did not act with the intention to deprive Swisher of the information.  (*Id.* at 2).

### D.    March 2018 Hearings on Swisher's second Sanction Motion

The Court held hearings on Swisher's second Sanction Motion on March 2, 15, and 22, 2018, during which the Court heard testimony from Mr. Cardwell, Mr. Clawson, Ms. Lancero, and Mr. Barton.  (Doc. 256 at 5).

### 1.    Findings as to Mr. Barton's and Ms. Lancero's Conduct re: Notice of Errata, the Response to the First Motion for Sanctions, and the existence of the Southern Arizona Plan

Following the 2018 hearing, the Court made the following findings as to Mr. Barton's conduct related to the Affidavits and Notice of Errata.  First, the Court found he filed Mr. Clawson's Amended Affidavit as a Notice of Errata.  (Doc. 222 at 14).    The Court found the one-page notice stated the Defendants are "[n]otifying the Court of an error appearing on Page 4 in the Affidavit" and nothing more.  (*Id.*)  The Court found Mr. Barton's filing of the Notice of Errata was an attempt to replace a perjured sworn Affidavit because its lack of content both (1) avoided alerting the Court that the Original Affidavit was perjured or (2) that it contained material misstatements of fact relevant to Swisher's claims.  (*Id.*)

As to the existence of the Southern Arizona Plan, the Court found that Mr. Barton steadfastly testified Mr. Clawson never formulated a plan for Southern Arizona, even when presented with the actual document.  (Rep's Excerpted Tr. Proceedings, Mot. Hr'g—Day 2, Mar. 15, 2018, Doc. 184 at 78–80).  The Court found Mr. Barton testified the Southern Arizona Plan was not finished or formulated, despite the Southern Arizona Plan being virtually identical to the other two Plans Defendants had produced in discovery.  (Doc. 222 at 21).    The Court ultimately found that regardless of Ms. Lancero or Mr. Barton's characterization of the Southern Arizona Plan, it was discoverable Rule 26(b) evidence that was required to be preserved and turned over to Swisher but was not.    The Court

specifically found that Intervenors' attempts at word play regarding the completion status of the Southern Arizona Plan during the hearing did not change that. (*Id.*) Thus, the Court found Mr. Barton and Ms. Lancero were alerted to a potentially discoverable piece of information specifically related to Swisher's claims and chose not to preserve or investigate that information and, even after the deleted plan was discovered, still testified it was not finished. (*Id.* at 22). The Court viewed this testimony as clear and convincing evidence that Ms. Lancero and Mr. Barton facilitated and continued to cover up Mr. Clawson's fraud and their own irresponsible conduct. (*Id.* at 23).

### 2.    The Court's Subsequent Rulings (Docs. 191; 222; 256; 284).

After the close of testimony, the Court issued a preliminary oral ruling from the bench, finding the egregious behavior of Defendants and Intervenors warranted a severe sanction. (Doc. 191). The Court accordingly struck Defendants' Answers (Docs. 22; 23) and entered default against Defendants. (*Id.*) The Court also ordered Mr. Barton and Ms. Lancero to self-report to the Arizona State Bar Association, and to provide a transcript of their testimony and a copy of the Court's written order to the State Bar. (*Id.*) The Court noted its ruling was preliminary and a written [o]rder would follow (Doc. 222).

The Court ultimately found Defendants and Intervenors jointly and severally liable for $153,800.00 in attorneys' fees and costs associated with the spoliation of "critical evidence shortly after the Complaint was filed."[5] (Doc. 284 at 14). The Court also found an additional compensatory award of $153,800 in attorneys' fees was justified against Intervenors because of the repeated and intentional misrepresentations they had made to the Court to "cover-up or minimize the exposure of their client's misconduct." (*Id.* at 18).

### E.    Appeal and Remand (Docs. 335; 347-1)

Intervenors appealed the Court's fee award against them on due process grounds.[6]

---

[5] Specifically, undersigned found that but for Defendants' conduct, fees would not have been incurred related to the "sanctions motions, the hiring of the forensic expert, responding to Defendants' Motion to Strike the expert, the three-days of evidentiary hearings, and research related to the perjured affidavit and spoilation." (Doc. 284 at 15).

[6] ACA also appealed the sanction award, but Swisher and ACA jointly moved to dismiss the appeal while it was pending. *Swisher Hygiene Franchise Corp. v. Accurate Chem. Acquisition Inc.*, 2022 WL 1718885 (9th Cir. 2022).

On appeal, Intervenors argued they had not been on notice they would testify at the March 2, 2018, hearing, and felt constrained in their answers by the attorney-client privileged communications on which they were questioned. *Swisher Hygiene Franchise Corp. v. Barton*, No. 20-16727 (9th Cir. Oct. 7, 2021), at Doc. 29. The Ninth Circuit agreed and found that "[a]side from being called as witnesses, the district court did not afford the attorneys notice that they were at risk of being sanctioned nor did it give them an opportunity to protect their individual interests." (Doc. 347-1 at 4). It therefore vacated the sanction award against the Intervenors and remanded the case. (*Id.*)

### F.   Swisher's Current Motion for Sanctions (Doc. 354)

On remand, Swisher filed a renewed Motion for Sanctions (Doc. 354) against Intervenors, jointly and severally, for their litigation misconduct under both 28 U.S.C. § 1927 and the Court's inherent powers. (Doc. 354 at 2). Therein, Swisher makes four requests. First, Swisher requests monetary sanctions from the Intervenors for attorneys' fees and costs. (*Id.* at 1). Second, Swisher requests the Court to order Intervenors to self-report to the State Bar of Arizona. Third, Swisher urges the Court to reaffirm its prior findings that: (1) there is "clear and convincing evidence that [Intervenors] facilitated and continued to cover up [Defendant] Clawson's fraud and their own irresponsible conduct" (Doc. 222 at 23); (2) "[Intervenors] were not credible and lacked candor to the Court in their testimony of their clients" (Doc. 256 at 5); (3) "[Intervenors] misconduct was willful and done in bad faith" (Doc. 222 at 29); and (4) [Intervenors] attempted, and nearly succeeded, in "defil[ing] 'the very temple of justice'" (Doc. 284 at 18). (*Id.*) Last, Swisher requests leave to file a separate Motion for Attorneys' Fees and Costs. (*Id.*).

### G.   October 2022 Hearing

The Court held an evidentiary hearing on Swisher's Motion on October 7, 2022. (Rep's Tr. Proceedings, Evidentiary Hr'g, Oct. 7, 2022, Doc. 382). The Court heard testimony from Mr. Barton, Ms. Lancero, Mr. Cardwell, Ms. Lynda Shely, Intervenors' ethics counsel, and Defendants' retained expert Mr. Jefford Englander. (*Id.*)[7]

1

### 1. Ms. Lancero's Testimony

2   Ms. Lancero recanted her prior testimony that the Intervenors were aware of the
3   Southern Arizona Plan on June 13, 2016, when they filed their Response to Swisher's first
4   Motion for Sanctions. (*Id.* at 68, 72, 78, 80, 84). She testified that she was "utterly scared
5   and confused" when called to testify, and she had not thoroughly reviewed the record. (*Id.*
6   at 99). She said after the hearing she reviewed the record and realized she did not learn
7   about the existence of the Southern Arizona Plan until January 2017. (*Id.* at 81). After the
8   hearing, she told Mr. Barton she needed to correct her testimony and contacted two ethics
9   attorneys to determine how best to do so. (*Id.* at 100-01). Her law firm ultimately retained
10  Ms. Shely to help her correct her testimony. (*Id.* at 187).

11  Ms. Lancero further testified she intended to retake the stand to correct her
12  testimony but fell ill. (*Id.* at 107–08). On March 14, 2018, the day before she would retake
13  the stand, Intervenors met with Shely to prepare Ms. Lancero. (*Id.* at 120). She explained
14  she was not well and Shely told her if she was ill she should not be in court. (*Id.* at 121).
15  She went to urgent care and was diagnosed with tonsolitis. (Doc. 361-2 at 28).

16  Intervenors filed a motion to continue the hearing because of Ms. Lancero's illness.
17  (2022 Evid. Hr'g, Doc. 382 at 189; Doc. 174). The Court denied this Motion. (*Id.* at 189;
18  Doc. 180). Ms. Lancero did not testify as planned on March 15 due to her illness. Instead,
19  Intervenors said they made the decision to have Mr. Barton make the necessary corrections
20  to Ms. Lancero's testimony. (*Id.* at 189). As noted, when asked about the Southern
21  Arizona Plan, Mr. Barton repeatedly refused to recognize it had been formulated or
22  finalized. (Mot. Hr'g at 78–80, Doc. 184).

23  Following the March 15 hearing, Mr. Barton testified he sent Ms. Shely the
24  transcripts and inquired whether she thought Ms. Lancero needed to retestify. (2022 Evid.
25  Hr'g, Doc. 382 at 189, 190). Ms. Shely confirmed she did not think Ms. Lancero needed
26  to retake the stand because Mr. Barton had sufficiently corrected the errors in Ms.
27  Lancero's testimony. (*Id.*) Ms. Lancero said she followed Ms. Shely's advice and did not
28  retake the stand when the Court reconvened for the final day of hearings. (*Id.* at 109).

1    Notwithstanding this advice, Ms. Lancero stated at the October 2022 hearing that she

2    regrets not retaking the stand.  (*Id.* at 109, 110).

3          The Court finds Ms. Lancero's testimony credible and her contrite demeanor in stark

4    contrast to her prior testimony.  She apologized for and said she regrets her unhelpful word

5    play at the March 2018 hearing regarding the Southern Arizona Plan.  (*Id.* at 74).  She

6    conceded that the Southern Arizona Plan was indeed formulated and explained that the

7    representation that the Southern Arizona Plan was not formulated was just her "taking Mr.

8    Clawson's perspective."  (*Id.* at 77–78).  She also admitted that if she and Mr. Barton had

9    disclosed in June of 2016 that the Southern Arizona Plan existed but was not finished,

10   Intervenors would have been required to produce the Southern Arizona Plan.  (*Id.* at 88,

11   89).  Both Ms. Lancero and Mr. Barton maintain, however, that they had no knowledge of

12   the Southern Arizona Plan before receiving a letter from Swisher's counsel on January 13,

13   2017, because Mr. Clawson had repeatedly told them it did not exist.  (*Id.* at 84, 98, 183;

14   Doc. 361-1 ¶ 42).

15                 **2.     Mr. Barton's Testimony**

16          At this hearing, Mr. Barton also admitted the Southern Arizona Plan was

17   formulated.  (2022 Evid. Hr'g, Doc. 382 at 195).  Confusingly, though, when Mr. Uppal

18   asked him if there was testimony he wanted to recant from the March 2018 hearing, Mr.

19   Barton declined.  (*Id.* at 192).  In his Declaration in support of the Response to the Motion

20   for Sanctions (Doc. 361-1), Mr. Barton also states that he regrets that he "did not

21   specifically identify in the Notice the change made to Mr. Clawson's original affidavit as

22   I had done for Plaintiff's counsel" but that his failure to do so was not an attempt to mislead

23   the Court or Swisher's counsel.  (*Id.* ¶ 36).  Instead, he said he did so to alert "the Court

24   and counsel to the error even though the error occurred in a document supporting a motion

25   that had been withdrawn by Plaintiffs."  (*Id.* ¶ 37).

26          Following the hearing, the parties filed post-hearing briefs and proposed findings of

27   fact and conclusions of law.  (Docs. 380, 380-1, 381, 381-1).

28   ///

## II.      Legal Standards for Imposition of Sanctions

Swisher moves for sanctions under 28 U.S.C. § 1927, which penalizes conduct that unreasonably and vexatiously multiplies the proceedings, and this Court's inherent authority.  *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

### A.      28 U.S.C. § 1927

The Court declines to consider whether Intervenors' conduct is sanctionable under 28 U.S.C. § 1927.  That statute states that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  "Though the Ninth Circuit has not commented on the issue of timeliness in the context of § 1927 sanctions, other courts have held that § 1927 motions must be made within a 'reasonable time' or 'as expeditiously as possible' after the entry of judgment, and should not be 'unnecessarily or unreasonably delayed.'" *Home Gambling Network, Inc. v. Piche*, 2015 WL 1734928, *19 (D. Nev. 2015) (citations omitted); *see also Cramton v. Grabbagreen Franchising LLC*, 2022 WL 1719687, at *29 (D. Ariz. 2022) (finding unreasonable delay where party waited two weeks after filing initial motion for sanctions to file separate request for sanctions under § 1927).

The Court granted Swisher's second Motion for Sanctions and entered Default Judgment against Defendants on March 22, 2018. (Doc. 191).  Swisher did not seek § 1927 sanctions in its second Motion.  (*Id.*)  Although it does so now, the Court finds the request untimely.  The Court will therefore limit its review to whether sanctions are warranted under this Court's inherent authority.

### B.      Court's Inherent Power

A district court may "award sanctions in the form of attorneys' fees against a party or counsel who acts in 'bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Leon v. IDX Sys. Corp.*, 464 F.3d. 951, 961 (9th Cir. 2006) (quoting *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)).  Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior "constituted or

1   was tantamount to bad faith." *Id.* (citation omitted).  Bad faith requires "recklessness . . .

2   combined with an additional factor, such as frivolousness, harassment, or an improper

3   purpose." *Fink*, 239 F.3d at 994.

4        The bad faith requirement sets a high threshold.  *Primus Auto. Fin. Servs., Inc.*, 115

5   F.3d at 649.  Although the Ninth Circuit has not addressed the burden of proof required for

6   a sanctions award under the court's inherent authority, it has affirmed a district court's bad

7   faith finding supported by clear and convincing evidence.  *See Lahiri v. Universal Music*

8   *& Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010).  The moving party bears

9   the burden of demonstrating the party against whom it seeks sanctions acted in bad faith.

10  *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015).

11       The issue here is whether the complained of misconduct evinces, by clear and

12  convincing evidence, bad faith: conduct amounting to "recklessness when combined with

13  an additional factor, such as frivolousness, harassment, or an improper purpose." *Fink*,

14  239 F.3d at 994.  Before the Court considers the documents and testimony related to the

15  Intervenors' conduct, it will first discuss the extent to which it may rely on its prior

16  findings.

17       **C.    Court's Prior Findings**

18       The parties dispute whether the Court can rely on its prior findings in determining

19  whether Intervenors acted in bad faith.  In its renewed Motion for Sanctions, Swisher

20  argues that various statements made by Intervenors at the March 2018 hearing provide a

21  basis or evidence of their bad faith effort to cover-up their client's spoliation.  (Doc. 354 at

22  15–17). Swisher argues sanctions are warranted in part because the Intervenors violated

23  their duty of candor and engaged in a pattern of fraud during the March 2018 hearings

24  about the existence of the Southern Arizona Plan, including Ms. Lancero and Mr. Barton's

25  repeated statements that the Southern Arizona Plan was just some "words on a page."

26  (Doc. 354 at 14–16).  To support this contention, Swisher cites to the Court's prior findings

27  and asks this Court to reaffirm them.  (*Id.* at 16).

28       Upon review of its prior Order, the Court notes it sanctioned Intervenors in large

part for the representations and misleading testimony Intervenors gave during the March 2018 hearing, which the Court found evidenced a bad faith effort to cover-up their client's spoliation and misrepresentations.  (Doc. 222 at 21–23).  Despite the Ninth Circuit vacating the sanction award, Swisher asks the Court to reaffirm its prior findings as they relate to the Intervenors' bad faith conduct.  (Doc. 354 at 2).  Swisher argues, without citation to authority, that the Intervenors did not object when Swisher moved for admission of the March 2018 hearing transcripts and so they cannot argue that testimony is inadmissible.  (Doc. 381 at 3).  Intervenors, on the other hand, argue the Court cannot rely on those portions of the prior orders because the Ninth Circuit vacated those findings on due process grounds.  (Doc. 361 at 2).

The Court agrees with the Intervenors.  Although Ms. Lancero and Mr. Barton were placed under oath at the March 2018 hearing, the Ninth Circuit determined that the testimony they provided was without due process because they had insufficient notice that they would have to testify.  (Doc. 347-1 at 4).  Swisher offers no authority to support its position that the Court may now use that testimony—or the findings that were based on that testimony—as a basis for finding they acted in bad faith.  Intervenors also objected throughout the hearing when Swisher sought to reintroduce those prior statements because those findings had been vacated by the Ninth Circuit.  (2022 Evid. Hr'g, Doc. 382 at 31, 73, 133).

When Swisher renewed its Motion for Sanctions on remand, the Court set an evidentiary hearing to cure those notice deficiencies and allow Intervenors an opportunity to answer after being afforded adequate due process.  Because their 2018 statements were made without adequate due process protections, the Court declines to consider them or the Court's previous findings in assessing the present allegations of bad faith.  *See Evanston Ins. Co. v. Westchester Surplus Lines Ins. Co.*, 2012 WL 12977548, at \*2 (W.D. Wash. May 14, 2012) ("A reversal generally annuls or sets aside the lower court's decision for all purposes.") (citing *State of California Dept. of Soc. Servs. v. Thompson*, 321 F.3d 835, 847 (9th Cir. 2003)); *DePrins v. Clark*, 566 F. App'x 608, 611 (9th Cir. 2014) ("Vacatur of an

order creates a legal status the same as if the order never existed."). But, by necessity, the parties have respectively referred to the prior testimony to clarify the record and used it as foundation during the hearing for their current testimony. Indeed, Intervenors entered portions of it by exhibit and through examination. So, the Court considers the prior testimony, but only for the purpose of judging witness credibility.[8] Nevertheless, the Court will focus its primary attention on the arguments made in the parties' briefings and at the October 2022 hearing.

Based on that record, the Court makes the following findings:

**D.    Sanctionable Conduct**

Swisher argues the Intervenors acted in bad faith in (1) the drafting and filing of Mr. Clawson's Amended Affidavit as a Notice of Errata in an attempt to replace Mr. Clawson's Original perjured Affidavit and (2) their untimely production of the Southern Arizona Plan and the Intervenors' subsequent attempts to cover up Mr. Clawson's spoilation of the Southern Arizona Plan. (Doc. 354 at 8-18).

The following dates are relevant to this conduct and summarize the events at issue:

- June 24, 2015: Swisher files a Verified Complaint and Application for Preliminary and Permanent Injunction in Maricopa Superior Court. (Doc. 1-1).

- July 7, 2015: Intervenors instruct Mr. Clawson not to delete any documents or information relating to Swisher's claims from his devices and instruct Mr. Clawson to create an image or backup of his computer. (2022 Evid. Hr'g, Doc. 382 at 159–160). Mr. Clawson fails to do.

- July 15, 2015: Defendants remove the case to Federal Court. (Doc. 1).

- July 21, 2015: Swisher files its First Amended Complaint. (Doc. 8). Swisher titles this filing "First Amended Complaint and Application for Preliminary and Permanent Injunction" but is not accompanied by a motion for preliminary injunction and does not make the necessary argument that

---

[8] Notably, the Court opined that though the Ninth Circuit had reversed its prior sanctions order, the prior testimony was given under oath, and therefore relevant insofar as it related to the witnesses' credibility. (2022 Evid. Hr'g, Doc. 382 at 7). Neither party responded nor objected to the Court's determination. (*Id.*)

injective relief is warranted.

- July 31, 2015: Defendants file a response to Swisher's request for preliminary injunction and attach Mr. Clawson's Original Affidavit. (Doc. 24-1 at 5).

- August 5, 2015: The Court advises Swisher that it will not consider its request for a preliminary injunction absent a separate motion pursuant to Rule 65 that is supported by legal authority. (Doc. 25).

- August 13, 2015: Swisher's computer expert Mark Cardwell testifies that the Southern Arizona Plan file on Mr. Clawson's computer is deleted on or after this date. (Doc. 139-1 at ¶ 30).

- August 25, 2015: Swisher files its Notice of Withdrawal for preliminary injunction, stating "in recognition of the time that has passed since the filing of the request for preliminary injunction and supporting memorandum of points and authorities, Plaintiffs are voluntarily withdrawing their request for preliminary injunction against Defendants." (Doc. 27 at 2).

- April 26, 2016: Defendants produce the Zall Email, a June 11, 2015, email from Mr. Clawson to Zall in which Mr. Clawson states, "Here is what I have come up with so far. . .. I'll work on Southern Arizona tomorrow." That email attached two business plans—the Phoenix Arizona Plan and the Northern Arizona Plan. (Docs. 361-1 at 46; 50).

- April 27, 2016: Barton files Notice of Errata and Amended Affidavit, with the Notice stating, "[d]efendants hereby notify the Court of an error appearing on page four in the Affidavit of Troy Clawson . . .." (Doc. 42).

- June 2, 2016: Swisher files its first Motion for Sanctions, alleging statements made in the Original Clawson Affidavit were false and seek a negative inference jury instruction regarding the alleged perjury. (Doc. 48).

- June 13, 2016: Defendants file their Response to the first Motion for Sanctions, claiming, in part, that "[a]lthough Clawson's email to Zall stated that he would 'work on Southern Arizona tomorrow,' Clawson never actually ended up formulating a plan for Southern Arizona." (Doc. 53 at 3).

- August 2016: While working on an ESI plan with Swisher's counsel, Ms. Lancero and Mr. Barton learn Mr. Clawson never imaged his computer, despite repeated representations that he had. (Doc. 361-2 at ¶ 19).

1

- August 31, 2016: Ms. Lancero sends Swisher her proposed Electronically Stored Information ("ESI") protocol for Mr. Clawson's laptop search based on recommendations provided to her by Jefford Englander of Peak Forensics. (2022 Evid. Hr'g, Doc. 382 at 145; Doc. 361-2 at ¶ 21).  Swisher was being advised by Mark Cardwell of Forentech.

- September 19, 2016: Ms. Lancero reaches an ESI agreement with Swisher using Swisher's search terms, allowing Mr. Cardwell to search the unallocated space on Mr. Clawson's computer for deleted files.  (*Id.* at 97).

- September 23, 2016: Parties agree to 90-day extension so Mr. Cardwell can perform his forensic examination of Mr. Clawson's computer.  (*Id.* at 98).

- December 7, 2016: Defendants file a Motion for Summary Judgment ("MSJ").  (Doc. 71).

- December 21, 2016: Swisher's expert discovery deadline. (Doc. 68).

- January 13, 2017: Swisher provides Intervenors a letter stating Cardwell had found the Southern Arizona Plan on Mr. Clawson's computer and could ascertain that Mr. Clawson had deleted the document on or after August 13, 2015.  (Doc. 361-1 at ¶ 41; 2022 Evid. Hr'g, Doc. 382at 59).

- February 9, 2017: Swisher files a Response to Defendants' MSJ, citing to evidence in the record, and attaching a declaration from Cardwell, wherein he states the Southern Arizona Plan must have been deleted on or after August 13, 2015.  (Doc. 89-1 at 74).

- February 20, 2017: Defendants file a Motion to Strike those portions of Mr. Cardwell's declaration related to the spoliation of files, including the Southern Arizona Plan, as untimely.  (Doc. 95).

- March 9, 2017: Swisher files a second Motion for Sanctions, this time requesting default judgment against Defendants, realleging (1) Defendants knew Clawson's Original Affidavit was false and Defendants attempted to cover it up by filing a Notice of Errata and Amended Affidavit and (2) further alleging Defendants lied in their Response to Swisher's first Motion for Sanctions because they stated the Southern Arizona Plan was never formulated when in fact it existed but had been deleted in or about August 2015.  (Doc. 103).

- March 3, 2017: Defendants filed their Response to Swisher's second Motion for Sanctions stating that their prior representation to the Court in response to the First Motion for Sanctions that the Southern Arizona Plan was "never formulated" was not perjurious.  Intervenors argued that "[t]he mistake at issue is one of poor word choice—not fraud. Counsel should have used the word 'finished' instead of 'formulated' in the legal brief submitted to the Court" (i.e., that Clawson never finished the Plan, rather than that he never formulated a Plan)." (Doc. 115).

- March 2, 15, 22, 2018: The Court holds hearings on Swisher's second Motion for Sanctions.

The Court will first consider Swisher's contention that sanctions are warranted because the Intervenors attempted to cover up Mr. Clawson's Original perjured Affidavit by filing a Notice of Errata with an Amended Affidavit.  (Doc. 354 at 8).

### 1.      Clawson Affidavits—Original and Amended

Swisher filed a preliminary injunction to enjoin Defendants from soliciting any Swisher employee for two years and from using or disclosing any information gathered, prepared, or assembled on behalf of Swisher.  (Doc. 8).  Defendants filed a Response in Opposition stating the preliminary injunction request was without merit and attached the Original Affidavit from Mr. Clawson dated July 31, 2015, in support of this argument. (Doc. 24-1).  As noted, the Original Affidavit states:

> 17. Swisher also alleges that Tony Khoury purportedly said that I told him that I had taken all of Swisher's 'working capital calculator documents and that ACS and I were using those documents to identify Swisher customers to target. I never made any such statement to Tony and I never gave any of those documents to ACS. As noted above, I have not solicited Swisher customers either before or after I left Swisher, **nor have I identified any Swisher customers that ACS should go after**.
>
> 18. **I am not in possession** of any Swisher confidential information or property, **nor did I ever provide** any Swisher confidential information or property to anyone at ACS.

(Doc. 24-1, ¶¶ 17–18) (emphasis added).

Mr. Clawson's statement that he had not identified Swisher customers that ACS

should go after, and that he had not provided confidential information or property to ACS was blatantly false, as evidenced by the June 11, 2015, Zall Email that Defendants produced on April 26, 2016.  (Doc. 50).  The following day, to "fix" this misrepresentation, Mr. Clawson, through his attorney Mr. Barton, filed his Amended Affidavit with the Court as a "Notice of Errata."  (Doc. 42).  The Notice of Errata did not specify how the Amended Affidavit differed from the Original Affidavit, other than to say that Defendants "hereby notify the Court of an error appearing on page four in the Affidavit of Troy Clawson." (Doc. 42).

Unlike the Original Affidavit, paragraph 17 of the Amended Affidavit does not contain the statement "nor have I identified any Swisher customers that ACS should go after," and instead states:

> Swisher also alleges that Tony Khoury purportedly said that I told him that I had taken all of Swisher's "working capital calculator documents" and that ACS and I were using those documents to identify Swisher customers to target. I never made any such statement to Tony and I never gave any of those documents to ACS. As noted above, I have not solicited Swisher customers either before or after I left Swisher.

(Doc. 42-1, ¶17).

Swisher argues when Mr. Barton filed the Notice of Errata and Amended Affidavit on behalf of Mr. Clawson, he "knew that Clawson's original Affidavit was a complete perjury."  (Doc. 354 at 9).  Swisher says this knowledge was based on the Zall Email, in which Mr. Clawson told Zall that he would "get to Southern Arizona" the next day. (*Id.*) Swisher says that instead of informing the Court of the misrepresentation, they filed a Notice of Errata that did not explain the misrepresentation.  (*Id.*)  Swisher argues this was an intentional misuse of a Notice of Errata, which is generally used to correct small errors such as typographical errors.  (*Id.*)  Swisher also argues it would not have withdrawn its motion for preliminary injunction but for the representations in Clawson's Original Affidavit.

It is clear to the Court that by the time the Amended Affidavit was filed on April

27, 2016, the Intervenors knew the Original Affidavit contained material misstatements. The Accurate Northern Arizona Plan and the Accurate Phoenix Arizona Plan, which were disclosed on April 26, 2016, clearly show Mr. Clawson had identified hundreds of Swisher customers ACS should go after.  (Doc. 50).  Indeed, this was the "correction" Defendants sought to address in amending Mr. Clawson's Original Affidavit.  But instead of alerting the Court to these misstatements of fact, Intervenors attached a one-page notice stating they were "[n]otifying the Court of an error appearing on Page 4 in the Affidavit."  (Doc. 42). Mr. Barton says, in hindsight, he regrets not expressly identifying the specific change made to the Amended Affidavit.  (Doc. 361-1 at ¶ 36; 2022 Evid. Hr'g, Doc. 382 at 182).  He maintains, however, that he was not attempting to mislead the Court or Swisher's counsel, and instead was seeking to correct the record.  He says he felt compelled to do so, even though the correction was being made to a document that responded to a request Swisher had voluntarily withdrawn.  (Docs. 361-1 at ¶ 37).  Barton further contends he believed he was ethically precluded from saying more than that the Original Affidavit contained an error, citing Sup. Ct. of Ariz. Ethics Advisory Comm. E0-20-0007.  (Doc. 361 at 10).

Although the Court finds Mr. Barton misused a Notice of Errata to correct a material misrepresentation, under these circumstances it is unclear to the Court how this Notice of Errata was filed for an improper purpose.  Swisher claims it withdrew its motion for preliminary injunction based in part on Mr. Clawson's Original Affidavit representation. (Doc. 381-1 at 8).  Swisher did not, however, provide this rationale in its Notice of Withdrawal.  Instead, Swisher stated "in recognition of the time that has passed since the filing of the request for preliminary injunction and supporting memorandum of points and authorities, Plaintiffs are voluntarily withdrawing their request for preliminary injunction against Defendants."  (Doc. 27 at 2).  It is true that the Amended Affidavit did not alert the Court that the Original Affidavit contained material misstatements of fact that went to the heart of a claim in the Complaint.  It is also true, however, that there were no pending motions before the court when Barton filed the Notice of Errata. So, it is difficult for this Court to find by clear and convincing evidence that the Notice of Errata was filed for an

improper purpose, and instead an inappropriately titled filing.  But again, Mr. Barton's years of experience should have informed him against that.

The Court also likely would have been amenable to a request from Swisher to re-subpoena Mr. Clawson for deposition to ask him about the discrepancies in his sworn statements.  But at the time, there was no pending motion before the Court that caused it to be misled by the Amended Affidavit.  And Swisher's representations in its Notice of Withdrawal belies its claim that it would not have withdrawn its request for preliminary injunction but for the statements in Mr. Clawson's Original Affidavit.  When such requests are withdrawn, it is typically because the parties have agreed and stipulated to the injunctive relief pending resolution of the case.  Had that been the case, the Court may otherwise be persuaded that Swisher unfairly relied upon Mr. Clawson's averments.  But in the absence such circumstances, it is difficult to infer improper purpose here.

In sum, the Intervenors knew Mr. Clawson's statement in the Original Affidavit was false.  Intervenors accordingly filed the Amended Affidavit to correct Mr. Clawson's misstatement.  Their attempt to do so, without specifically alerting the Court of Mr. Clawson's prior material misstatements, remains suspect.  But, absent any evidence of an improper purpose, the Court cannot find Swisher has met its burden of proving by clear and convincing evidence that the Intervenors' filing of the Notice of Errata with an Amended Affidavit amounted to bad faith.

**2.      Discovery and Production of the Southern Arizona Plan—Spoliation**

The remainder of the conduct at issue relates to Mr. Clawson's spoliation of the Southern Arizona Plan and the Intervenors' conduct surrounding its untimely production and their subsequent efforts to allegedly hide it.  Swisher contends sanctions are warranted because the Intervenors: (1) failed to image and preserve Mr. Clawson's computer devices to prevent Swisher from discovering the Southern Arizona Plan; (2) failed to timely produce the Southern Arizona Plan when they learned of its existence; (3) attempted to limit Mr. Cardwell's search parameters to exclude unallocated space on Mr. Mr. Clawson's

computer devices where the Southern Arizona Plan was ultimately discovered; and (4) filed a motion to strike portions of Mr. Cardwell's declaration in an attempt to cover-up their failure to produce the Southern Arizona Plan.  (Doc. 354 at 14).

a.  **Failure to Image and Preserve Clawson's Computer Devices**

Swisher argues sanctions are warranted because Intervenors failed to image and preserve Mr. Clawson's computer devices arguing that Intervenors did so to prevent the discovery of the Southern Arizona Plan.  (Doc. 381 at 6).

The Court finds the following facts relating to evidence preservation credible: At the outset of this lawsuit Intervenors instructed Mr. Clawson to preserve and not destroy relevant evidence on his devices.  (Doc. 361-1 at ¶ 6; 2022 Evid. Hr'g, Doc. 382 at 160). ACS President Zall also sent a litigation hold memorandum to Mr. Clawson, who acknowledged receipt.  (Doc. 361-1 at ¶ 7).  Ms. Lancero sent a reminder email to Mr. Clawson to have him arrange for his computer to be imaged.  (2022 Evid. Hr'g, Doc. 382 at 161).  Mr. Clawson responded that he had figured it out, and Mr. Barton further instructed him to keep a record of how he did so.  (*Id.* at 164).

Apparently, Mr. Clawson did not do so.  (Doc. 361-1 at ¶ 40).  Swisher claims Intervenors did not have Clawson image his computer because it was part of a broader plan to "make the Southern Arizona Plan disappear" and to prevent its discovery.  (Doc. 381 at 7).  Mr. Cardwell agrees with Swisher's allegations, testifying that leaving a client to image his own computer is "reckless and irresponsible."  (2022 Evid. Hr'g, Doc. 382 at 42, 43). Mr. Cardwell further testified it was "crazy" for Mr. Barton to have not instructed Mr. Clawson to stop using his computer.  (*Id.* at 47).  Yet during this same testimony, Mr. Cardwell admitted when he examined Mr. Clawson's electronic devices, he found no evidence that the Intervenors were involved in the Southern Arizona Plan's spoliation.  (*Id.* at 59).

The Court credits Mr. Cardwell's opinion and finds it was reckless for Intervenors to ask Mr. Clawson to image his own computer, particularly because of Mr. Barton's

extensive experience defending and prosecuting non-compete and trade secret cases.  (*Id.* at 44).  Given the timing of events, however, the Court does not find this was done for an improper purpose, or as part of plan designed to prevent the discovery of the Southern Arizona Plan.   Indeed, the Intervenors instructed Mr. Clawson to preserve relevant evidence on his devices at the outset of the lawsuit.  (*Id.* at 160).  ACS instructed the same, and Mr. Clawson confirmed receipt.  (Doc. 361-1 at ¶ 7).  Intervenors followed up with him and unreasonably relied on his representations that he had done so.  (2022 Evid. Hr'g, Doc. 382 at 164).   In August 2016, when they learned he had not, they allowed for Mr. Cardwell to do so.  (Doc. 361-2 at ¶ 19; 361-1 at ¶ 40).  Mr. Cardwell ultimately uncovered the Southern Arizona Plan but confirmed he found no evidence that the Intervenors were involved in its spoliation.  (2022 Evid. Hr'g, Doc. 382 at 59).  Based on these facts, the Court finds Swisher has not met its burden of proving by clear and convincing evidence the Intervenors' failure to image Mr. Clawson's computer was done for an improper purpose.

### b.   Failure to Preserve and Produce the Southern Arizona Plan

Intervenors say they first learned of the existence of the Southern Arizona Plan on January 13, 2017.   (Doc. 361-1 at ¶ 41, 42).  That day, they say they received an email from Swisher's counsel informing them they had found a document titled "Accurate Southern Arizona Plan" on Mr. Clawson's computer and that their expert could ascertain that Mr. Clawson had deleted the document after the filing of the lawsuit, or in August 2015.  (*Id.*)  Prior to this time, Intervenors claim Mr. Clawson had repeatedly told them he did not create a Southern Arizona Plan.  (*Id.* at ¶¶ 22; 39; 42).

The Court finds the Intervenors' testimony credible as to when they came to know about the Southern Arizona Plan's existence.  Nothing in the record suggests Intervenors knew the Southern Arizona Plan existed and had refused to produce it before receiving the letter from Swisher's counsel about Mr. Cardwell's findings.   At best, the evidence suggests that Intervenors failed to adequately push their client to look for a document he

had represented in an email he was going to work on in the future.  But both Mr. Barton and Ms. Lancero aver that Mr. Clawson repeatedly told them he had never created the Southern Arizona Plan, and this misrepresentation was the reason it was not produced before Mr. Cardwell found it on Mr. Clawson's computer.  In the absence of evidence suggesting otherwise, the Court must give their testimony the benefit of the doubt.

The Court also notes that the Intervenors' timely production of the Zall Email in April of 2016, that attached the Northern Arizona Plan and Phoenix Arizona Plan—Plans that Swisher established are nearly identical to the Southern Arizona Plan—undermines the suggestion that Intervenors were aiding their client in hiding the Southern Arizona Plan. (2022 Evid. Hr'g, Doc. 382 at 77; Doc. 50).  While the Court has serious concerns about Mr. Clawson's failure to adequately preserve evidence, and the Intervenors' diligence in ensuring preservation of relevant ESI, the Court does not find clear and convincing evidence to show that Intervenors knew about and purposely hid the Southern Arizona Plan before January 2017 as part of a "strategic effort to hide [] their client's perjury and their own fraud upon the Court."  (Doc. 364 at 9).  Instead, after hearing their testimony at the October 2022 hearing, the Court finds that Intervenors unwisely accepted Mr. Clawson's misstatements as truth and defended accordingly.  *Zambrano v. City of Tustin*, 885 F.2d 1473, 1485 (9th Cir. 1989) (noting that sanctions are not available under the court's inherent power when conduct is merely inadvertent).

### c.    Electronically Stored Information Negotiations

Swisher next argues sanctions are warranted because the Intervenors attempted to limit Mr. Cardwell's search parameters to exclude unallocated space on Mr. Clawson's computer devices.  (Doc. 354 at 14).  Swisher says this was the exact space where Mr. Cardwell discovered the Southern Arizona Plan and thus Intervenors tried to cover up Mr. Clawson's spoliation of evidence.  (*Id.*)  Intervenors argue they did not seek to prevent Mr. Cardwell from discovering the Southern Arizona Plan and in fact that it was Ms. Lancero who, after discovering her client had not imaged his computer, suggested Swisher's expert create the forensic image of Mr. Clawson's computer.  (Docs. 380 at 12; 361-2 at ¶ 19).

On August 31, 2016, the parties discussed the parameters of a forensic examination that would be conducted on Mr. Clawson's devices.  (2022 Evid. Hr'g, Doc. 382 at 145). They agreed that Mr. Jefford Englander of Peak Forensics would perform the search for Intervenors' and Mr. Cardwell would perform the search for Swisher.  (*Id.* at 147).  Ms. Lancero sent Mr. Englander's proposal of how to accomplish this task to Swisher.  (Doc. 361-3 at ¶ 7).  Swisher agreed with Intervenors' proposal and suggested the following modifications:

> With regard to the specifics of your proposal below, we would like to add the following two items:
>
> 1. Peak Forensics' search of "all user-accessible files" will include deleted and unallocated files; and
>
> 2. Peak Forensics will provide a list of any files where it appears that the file type differs from the extension and/or the file extension has been changed . . ..

(*Id.* at ¶ 8).

Swisher takes issue with Ms. Lancero's response email, which requested to modify number 1 to "user-accessible files and deleted files."  (2022 Evid. Hr'g, Doc. 382 at 147, 148).  While it is true that Ms. Lancero's email suggests she attempted to limit the search parameters to exclude unallocated space, the parties ultimately agreed to allow Mr. Cardwell to search the unallocated space.  (*Id.* at 59).  Swisher says this makes no difference because Intervenors knew it would seek court intervention to access the unallocated space if they did not agree to it.  (Doc. 381 at 9).  Swisher says during the March 2018 hearing Ms. Lancero conceded that, had Swisher agreed to Intervenors' original search parameters, the Southern Arizona Plan would have never been uncovered. (Rep's Excerpted Tr. Proceedings, Mot. Hr'g—Day 1 at 51, Mar. 2, 2018, Doc. 172). Nonetheless, Ms. Lancero clearly states, in both her email exchange and in her testimony, that she was "going by the advice of Peaks [Forensics]" in suggesting the terms of the ESI plan.  (2018 Mot. Hr'g—Day 1 at 48; 2022 Evid. Hr'g, Doc. 382 at 95; Doc. 361-2 at ¶

22).

Assuming Intervenors knew a Southern Arizona Plan existed in August 2016, it may be plausible Ms. Lancero sought to prevent Mr. Cardwell from searching the unallocated space because this is where the Southern Arizona Plan would have been located.  The Court, however, finds the inference inappropriate for four reasons.  First, even if the Court were to entertain the unsupported proposition that Ms. Lancero had knowledge of the Southern Arizona Plan at this time, nothing in the record suggests she knew the Southern Arizona Plan was in the unallocated space.  Second, the Court is persuaded that she reasonably relied on the advice of her expert, Mr. Englander, in her communications with Swisher's counsel, who told her to agree to Number 2 but clarify Number 1 by suggesting "we search for deleted files" not "unallocated files."  (Doc. 361-3 at ¶ 9; 2022 Evid. Hr'g, Doc. 382 at 156).  These are highly technical forensic terms and attorneys predominately hire third-party computer experts to aid with this type of discovery to comply with their ethical duties.  Third, based on the agreed-upon search terms, which Swisher confirmed the parties reached after "diligently [working] to resolve potential discovery disputes," Swisher ultimately searched the unallocated space and found the Southern Arizona Plan. (2022 Evid. Hr'g, Doc. 382 at 59; Doc. 67).  Had Intervenors' goal been to prevent Swisher from discovering the deleted Southern Arizona Plan, it does not make sense that they ultimately would have stipulated to the search terms.  Last, at Swisher's request, Intervenors stipulated to extend Swisher's expert disclosure deadline to December 21, 2016, so that Mr. Cardwell could conduct his examination of Mr. Clawson's computer and thumb drive, and Defendants' expert disclosure deadline was extended to January 20, 2017. (Doc. 361-2 at ¶ 25).

The Court therefore finds Swisher has not met its burden of proving by clear and convincing evidence the Intervenors' ESI negotiations were done for an improper purpose.

### d.    Motion to Strike

Swisher last contends the Intervenors attempted to cover up Mr. Clawson's spoliation of evidence by improperly moving to strike those portions of Mr. Cardwell's

declaration related to the late discovery of the Southern Arizona Plan he found on Mr. Clawson's computer.  (Doc. 354 at 5).  Intervenors argue Swisher's expert report was, in fact, untimely: it was filed 60 days after Swisher's expert disclosure deadline and 20 days after Defendants' expert disclosure deadline, even after the parties had agreed to give Mr. Cardwell a 90-day extension to complete his examination of the computer.  (Doc. 361 at 12).  The Motion to Strike, Intervenors claim, noted that Mr. Cardwell's declaration included expert opinions in paragraphs 23 and 25-30 that had not been included in the Rule 26(a)(2) Expert Disclosure Statement that was due on December 21, 2016.  (*Id.*) Defendants alternatively requested the Court give them the opportunity to respond to the new opinions with their own expert report.  (*Id.*)  Intervenors attach a declaration from Mr. Keith Beauchamp, an expert federal court practitioner, who indicates this type of request and conduct falls well within the standard of care for federal court practitioners.  (Doc. 361-4 at ¶ 10).

It is easier to infer improper purpose from this conduct given the timing of the Motion to Strike.  The Motion was filed after Swisher informed the Intervenors of Mr. Clawson's spoliation of the Southern Arizona Plan.  But the timing of the Motion is the only indication of this improper purpose, and the Court finds that more is needed to establish the bad faith required to impose sanctions.  It is true the paragraphs Intervenors sought to strike included opinions about when Mr. Clawson deleted the Southern Arizona Plan.  (Doc. 95-1 at ¶ 30).  It is also true, however, that Intervenors were attempting to protect their clients from being prejudiced by a late disclosure.  Taking a justifiable position, Intervenors note that Swisher has not provided a real excuse as to why Cardwell's examination and report was not timely completed and produced, particularly considering the long extension provided for Swisher's expert disclosures.  The record reflects that Defendants agreed upon the ESI search terms and provided Mr. Cardwell with Mr. Clawson's computer in September 2016, well before Swisher's extended expert disclosure deadline.  (2022 Evid. Hr'g, Doc. 382 at 48; Doc. 361-2 at 24).

The Court therefore finds Swisher has not met its burden of proving by clear and

1  convincing evidence the Intervenors' filing of the Motion to Strike was filed for an
2  improper purpose.

3  **III.    Conclusion**

4        Imposing sanctions is an "extraordinary remedy." *In re Keegan Mgmt. Co., Sec.*
5  *Litig.*, 78 F.3d 431, 437 (9th Cir. 1996).  The Intervenors clarified the factual circumstances
6  surrounding their conduct at the October 2022 hearing and in their briefing.  The Court
7  also finds the witnesses' testimonies were considerably more respectful and credible than
8  their prior testimonies.  Defendant Clawson's spoliation of material evidence warranted
9  the extraordinary remedy of default judgment and the costs of attorneys' fees associated
10  with that misconduct.  However, given the Court's reconsideration of the record and the
11  testimony given at the October 2022 hearing, the Court no longer finds sanctions against
12  Defendants' attorneys are warranted here.

13        Accordingly,

14        **IT IS HEREBY ORDERED** that Swisher's Motion for Sanctions (Doc. 354) is
15  **denied**.

16        **IT IS FURTHER ORDERED** that the attorneys' fees awards against Attorney
17  David Barton, Attorney Katya Lancero, and the BurnsBarton Law Firm in the Clerk's
18  August 3, 2020, Judgment (Doc. 307) is **vacated**.

19        **IT IS FINALLY ORDERED** kindly directing the Clerk of Court to **vacate in part**
20  the August 3, 2020 Judgment (Doc. 307) in accordance with this Order. All other matters
21  being resolved in this case, the Clerk of Court is kindly directed to terminate this action.

22        Dated this 31st day of March, 2023.

Honorable Diane J. Humetewa
United States District Judge

- 29 -